Louis E. Jacobson *vs.* Timothy J. Sullivan & another.

Hampshire.    October 22, 1890. — November 25, 1890.

Present: Field, C. J., Devens, W. Allen, C. Allen, & Knowlton, JJ.

*Sale of Clothing Business — Option.*

An agreement in writing for the sale of a clothing business, to take effect at a future day, in which the seller agreed to sell goods on his own account till that day, when he was to sell and the purchasers were to buy so much of the stock in trade "not exceeding $1,000 in value" as should then remain unsold, contained the proviso that the purchasers should "be bound to take only such goods as they themselves shall select." Then followed the stipulation, that "in said goods so to be purchased there shall be no single vests or no single coats; the coats and vests purchased shall be coats and vests to match." *Held,* in an action brought by the seller for breach of the agreement, that the purchasers had only a right to determine by selection what goods they would take to make up the requisite quantity, and not an option to take any or none of the goods.

CONTRACT for breach of an agreement in writing, dated May 15, 1888, between Louis E. Jacobson, on the one hand, and Timothy J. Sullivan and Timothy J. Carroll, doing business under the name of Sullivan and Carroll, on the other hand, for the sale of a clothing business, which contained the following provisions, the words in italics being interlined:

"Said Jacobson covenants and agrees with said Sullivan and Carroll, for the consideration hereinafter mentioned, to sell, set over, and transfer to said Sullivan and Carroll the lease and his interest in the clothing store in the Opera House Block in said Northampton, now and heretofore conducted and carried on by said Jacobson in the sale of clothing. He also agrees to sell the good will of his business and store to said Sullivan and Carroll, and also the articles and store fixtures agreed upon which are in

said store, as follows. . . . Said Jacobson further covenants and agrees that he will not engage in the clothing business in Northampton while said Sullivan and Carroll are carrying on that business there. Said sale and transfer shall be executed and take effect on the first day of September, A. D. 1888. And said Jacobson further covenants and agrees to sell and set over to said Sullivan and Carroll, on said first day of September, so much of the general stock, goods, and merchandise of said Jacobson, to the value of one thousand dollars, as shall on said first day remain and be unsold by said Jacobson, provided that said Sullivan and Carroll shall be bound to take only such goods as they shall select. The price of said goods and value of same shall be the actual cost thereof to said Jacobson, which cost shall be determined and ascertained by the invoice bills thereof. . . . And on said first day of September said Sullivan and Carroll agree to buy, purchase, and accept so much of the general clothing stock, furnishing goods, hats, caps, etc. of said Jacobson, not exceeding one thousand dollars in value, *provided that they shall be bound to take only such goods as they themselves shall select*, as said Jacobson shall have on hand and unsold on said September 1st, the price to be ascertained as hereinbefore stated. But in said goods so to be purchased there shall be no single vests or no single coats. The coats and vests purchased shall be coats and vests to match. Overcoats are not referred to in the word ' coats ' used above. The value of said goods so purchased, not exceeding $1,000, and the price of same, shall not be due and payable to said Jacobson until October 1st, 1888."

At the trial in the Superior Court, before *Mason*, J., there was evidence tending to show that, after the execution of the contract by the plaintiff and the defendants, the defendants wholly neglected and refused to perform it; and that they never paid any money or selected any goods thereunder. The defendants asked the judge to rule that the portion of the contract relating to the sale of goods would have been satisfied by the defendants selecting any amount of goods less than one thousand dollars, and that upon this part of the case the plaintiff was only entitled to nominal damages. The judge declined so to rule, and ruled as follows: " A question has arisen, what is the proper construction of the agreement as it now stands, a clause having

been interlined, by which the defendants were in terms to take only such goods as they should select. As it originally stood, the defendants had stipulated to take of the plaintiff's stock the amount of goods which at the amount paid for them by the plaintiffs, would amount to $1,000; but that was qualified by the phrase that is interlined, and the question has arisen, What is the force of that phrase? Whether it released the defendants from the obligation to buy any goods, or only such nominal amount as they might select; or simply, when taken in connection with the whole instrument, it means that goods to be taken to the amount of $1,000 should be selected by the defendants; and it is this last construction which for the purposes of this trial the court adopts, and you are to assume that the contract means, that the defendants were to take from the stock of the plaintiff the unbroken sets which are described. They were not to take odd coats, odd vests, but only matched suits to the amount of $1,000, at the cost price, and that the defendants were to have the privilege of making the selection."

The jury returned a verdict for the plaintiff; and the defendants alleged exceptions.

*D. W. Bond & J. W. Mason,* for the defendants.

*J. B. O'Donnell,* for the plaintiff.

KNOWLTON, J.    The plaintiff was the proprietor of a clothing store, and on May 15, 1888, he entered into a contract in writing with the defendants, whereby he agreed to sell, and they agreed to buy, for a specified price, his lease, the good will of his store, and the store fixtures and other articles which were used in conducting his business; and he also agreed for the same considerations not to engage in the clothing business in Northampton while the defendants were carrying on the business there. The contract was to take effect on September 1st, 1888, and in the mean time the plaintiff was to continue selling goods on his own account. This part of the contract apparently covered everything pertaining to the business except the goods which were kept for sale in the store. As to them, the parties made a separate provision. How large was the stock then on hand does not appear by the bill of exceptions, but it is said in argument that it was of the value of $10,000. The parties appear to have expected that there would be, or at least might be, more than one

thousand dollars' worth left unsold by the plaintiff on September 1st. In regard to these, they stipulated that the plaintiff should sell to the defendants, on "said first day of September, so much of the general stock, goods, and merchandise of said Jacobson, to the value of one thousand dollars," as should then " remain and be unsold by said Jacobson," and that the defendants should " buy, purchase, and accept so much of the general clothing stock, furnishing goods, hats, caps, etc. of said Jacobson, not exceeding one thousand dollars in value," as Jacobson should "have on hand and unsold on said September 1st." The price was to be the actual cost to Jacobson, to be determined by the invoices, and in estimating the quantity to make up the one thousand dollars the value was to be determined in the same way. These provisions definitely fixed the quantity to be sold. It was to be all that remained unsold if the whole did not exceed one thousand dollars in value, but it was not to exceed that amount. The contract was incomplete without another provision ; for it is evident that, while some of the goods might be worth more than the cost price, many of them would be likely to be worth considerably less than that, and if, as the parties contemplated, the quantity left unsold on September 1st should exceed one thousand dollars in value, it would be important to know which part of the goods should be transferred under the contract. To provide for this condition the contract contains the following clause, which was interlined : " Provided that they [the defendants] shall be bound to take only such goods as they themselves shall select."

The defendants contend that the effect of this clause is to relieve them from all obligation under this part of the contract, and to leave it optional with them whether to take any goods, or any more than a single article of small value. To adopt their construction would leave an important provision of the contract without binding force in favor of the plaintiff, for whose benefit it was evidently inserted. It would render meaningless the following provisions found in the contract: " In said goods so to be purchased there shall be no single vests or no single coats," and " the coats and vests purchased shall be coats and vests to match." This stipulation was for the benefit of the defendants, and relieved them from the obligation to take single vests with

no coats to match them, or single coats with no vests to match them, if the whole stock should be less than one thousand dollars in value. If the defendants' contention were correct, there would be no occasion for such a stipulation.

In view of the situation of the parties, and the subject matter and the purpose of their agreement, we are of opinion that the clause in regard to selection was not intended to contradict the otherwise clear and definite provisions of the contract as to the quantity to be sold, and to nullify that part of the contract, but only to give the defendants the right to determine by selection what goods they would take to make up the quantity which they agreed to buy.          *Exceptions overruled.*