## KIRWAN & RIGGS *vs.* WINFIELD W. ROBERTS.

*Contracts—Agreement by Buyer to Specify the Style of Goods to be De-*
*livered.*

When the offer is to sell a given quantity of certain articles of a style or
size to be selected by the buyer, and the latter accepts the offer and
agrees to specify the styles to be delivered, there is a complete contract
and if the buyer neglects or refuses to make the specification he is
guilty of a breach of the contract.

A written contract provided for the sale by plaintiff to defendant of a
designated number of cans of three sizes and certain prices for each
size, deliveries to be made as buyer may order during the season of
1900, the buyer to specify the style of cans wanted.   *Held*, that this
constituted a complete contract and imposed upon the buyer the duty
of designating the styles of cans to be delivered to him.

Appeal from the Superior Court of Baltimore City
(PHELPS, J.)

The bought and sold notes referred to in the opinion of the
Court were as follows:

Baltimore, Jan. 5th, 1900.

Sold for account of Kirwan & Riggs, city, to W. W. Roberts, city.

700,000 Standard No. 2 and No. 3 cans, full complement of caps and the usual guarantee against leaks, specifications at buyer's option at the following prices : No. 2 small hole, $1.85; No. 2 peach hole, $1.90; and No. 3 extra peach hole, $2.35.

Deliveries to be made as buyer may order. during the season of 1900, subject to the following schedule: 5 per cent in February, 5 per cent in March, 5 per cent in April, 10 per cent in May, 20 per cent in June, 15 per cent in July, 20 per cent in August, and 20 per cent in September. It is agreed that the buyer may draw during any month whole or in part of the cans allotted to the following month in the above schedule of deliveries.

Terms: Net cash the first of each week for all cans delivered the previous week.

W. W. Roberts.　　　　　E. C. Shriner and Company,

Brokers.

Baltimore, Md., Jan. 5th, 1900.

We have this day sold Mr. W. W. Roberts of Baltimore, Md. For a-c of Kirwan & Riggs of Baltimore, Md. Four hundred thousand (400,000) cans style of cans to be delivered at his option as follows:—

| | |
|---|---|
| 2 No. Small Hole, | $1.85 per 100. |
| 2 No. Large Hole, | 1.90 per 100. |
| 3 No. Large Hole, (2 5-16 opening) | 2.35 per 100. |

To be delivered 5 per cent each: Feb., March, and April.

10 per cent May: 20 per cent June: 15 per cent July: 20 per cent each August and September.

Mr. W. W. Roberts to specify on the first of each month the style cans and during said month.

Cans guaranteed against leaks, exceeding two in each thousand.

Terms: S-D against B-L.

W. W. Roberts.　　　　　E. F. Kirwan and Company.

*Plaintiffs' 1st Prayer.*—That the plaintiffs agreement to wait for the payment overdue under the contracts offered in evidence, did not operate to change or modify said contracts in respect to future deliveries. And if the jury shall find that on Saturday, September 8th, 1900, the plaintiffs agreed with the defendant to wait until the following Tuesday for a settlement of the arrearages under said contracts, and that the defendant failed to make settlement as agreed, then the plaintiffs were entitled to refuse further deliveries until such arrearages were paid ; and the verdict of the jury must be for the plaintiffs subject to the instructions set forth in the plaintiffs' third prayer. (*Refused.*)

*Plaintiffs' 2nd Prayer.*—That if the jury find that on Tuesday, September 11th, 1900, the defendant's agent North ordered the plaintiffs to ship to Cambridge 1000 cases of extra peach hole cans; and that at the time of said order the defendant had failed to settle his arrearages as agreed (if they so find), then the refusal of the plaintiffs to ship any but peach hole cans to that day, as testified to by said North, did not entitle the defendant to rescind the said contracts; and the verdict must be for the plaintiffs subject to the instructions set forth in the plaintiffs' third prayer. (*Refused.*)

*Plaintiffs' 3rd Prayer.*—That if they find for the plaintiffs their verdict must be for the differences between the cost of manufacture and the contract price of No. 3 cans, if they find that in the latter part of July the defendant specified that all future deliveries should be No. 3 cans and the plaintiffs accept said specifications, calculated upon the number of cans which they may find the defendant refused to take and the plaintiffs were ready and able to furnish under the contracts offered in evidence.

2. The jury may deduct from the plaintiffs claim such sum as they may find to be due the defendant under the guaranty against leaks contained in said contracts.

3. The defendant is not entitled to any deduction for peach hole cans received by him in lieu of extra peach hole cans, which were used by him and knowingly paid for as a good delivery under said contracts. (*Refused.*)

The defendant's first prayer which was granted, instructed the jury that there was no legally sufficient evidence to entitle the plaintiffs to recover.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page, Boyd and Schmucker, JJ.

*Joseph C. France* (with whom was *Edward J. Colgan, Jr.*, on the brief ), for the appellants.

The plaintiffs' prayers were intented to embody the following principles:

(1.) That where a vendee has made default in his installment payments, the vendor has the right to withhold deliveries until the default is made good and that such withholding does not entitle the vendee to take advantage of his own wrong and treat the contract as rescinded. (2.) That an agreement on the part of the vendor to wait for overdue payments, does not of itself operate to change or modify the contract with respect to future deliveries and payments. (3.) That where goods are ordered from a manufacturer, the measure of damages for refusal to accept, is the difference between the contract price and the reasonable cost of making. (4.) That where a vendee has knowingly accepted, used and paid for a substituted article as a good delivery under a contract he cannot thereafter set up a claim for consequential damages arising from the substituted use. These propositions it is submitted are well established. *McGrath* v. *Gegner*, 77 Md. 331; *Mayor and City Council* v. *Schaub*, 96 Md. 534; *Walter* v. *Bloede*, 94 Md. 80; *Eckenrode* v. *Chemical Co.*, 55 Md. 51; *Walker* v. *Pue*, 57 Md. 155.

These principles were not questioned by the learned Judge below, but he felt himself bound to take the case from the jury under the ruling of this Court in *Wheeling Steel and Iron Company* v. *Evans*, 97 Md. 305. The conclusion of the learned Judge below was this: That the contracts between the appellants and the appellee gave to the latter the option of ordering one or more of the three kinds of cans, distinct in

style and price; that the existence of this option left the contract incomplete at the date of the alleged cancellation; that it was impossible therefore to say what style of cans the appellee would have ordered; and that consequently no measure of damages could be laid down.    With very great deference to the Court below, it is respectfully submitted that the case at bar and the case cited are not alike.

*First.* In the case cited the buyer did not contemplate or contract for the right to select styles during the running of the contract; but as the Court said: "The super-addition of the words 'specifications to follow'  *  *  *  constituted in legal effect a new and independent offer requiring an acceptance by the vendor." On the other hand, the case at bar presents a formed contract under which there are alternative methods of performance. (*Jacobson* v. *Sullivan*, 152 Mass. 480; 9 L. R. A. 508; and see the notes to *Salentine* v. *Insurance Company*, 12 L. R. A. 690.) In the brief of the appellant's counsel in the last-named case, the authorities are correctly summed up as follows: "If the party entitled to choice neglects to elect by fulfilling, the right of choice passes thereupon to the other party who may sue for the breach for the alternative he prefers." In any event, however, the vendor should be entitled to his profit on that made of performance in which he has the least profit.

*Second.* The case at bar differs further from the case cited in this: In July, 1900, a long time before the alleged cancellation, the appellee had specified the style of cans he wanted from that time on and the appellee had said: "All right, sir, you shall have them." This testimony came from the appellee and his bookkeeper; it was embodied in the plaintiff's third prayer, but the Court ignored it in taking the case from the jury. *Dambman* v. *Lorentz*, 70 Md. 380.

*Wm. A. Wheatley*, for the appellee.

The "bought and sold" notes relied upon by the plaintiffs do not contain all the essential elements of enforceable contracts.

The minds of the parties had not met on the number of each size of cans or the style of openings in each of said cans. The plaintiffs could not do anything under the "bought and sold" notes only as defendant furnished the specifications and the same were accepted by plaintiffs.

It is admitted that under the "bought and sold" notes the defendant had the right to elect which sizes of cans and openings he would take, and whether all the cans sold were to be paid for at $1.85 per 100 or some at $1.90 per 100 and some at $2.35 per 100; and the plaintiffs were unable to tell for want of specifications the exact contract though plaintiffs regarded the contracts as closed for the sale of 1,100,000 cans, the defendant having the option to specify for any or all three sizes. "This testimony admitted by the plaintiffs correctly interprets the written evidence." *The Wheeling Steel and Iron Co.* v. *Evans*, 97 Md. 305.

For so many cans as the defendant furnished definite and certain specifications and the same was accepted by the plaintiffs there became a contract and it is admitted that the defendant has paid for all the cans for which he furnished specifications. Can the fact of the defendant having furnished specifications for and received 799,600 cans from plaintiffs make defendant liable in damages on that part, towit: 300,600 cans for which no specifications were furnished, if so, what is the measure of damages? "Is it the difference between the contract price and the market price, or the contract price and the cost of manufacture, or either, on the entire 300,600 cans reckoned on the basis of $2.35 per 100 cans; or on the basis of $1.90 per 100 cans; or $1.85 per 100 cans; or on some other basis founded on an arbitrary apportionment of the 300,600 cans amongst the three different sizes?" "What quantity of each size could a Court or jury declare that the defendant ought to have specified?" "If either Court or jury had undertaken such a task it would have supplied a term of the contracts which the parties themselves failed to incorporate, and manifestly such a proceeding would have been unwarranted. *Wheeling Steel and Iron Co.* v. *Evans*, 97 Md. 305; *Thomson* v. *Gortner*, 73 Md. 482.

In the case at bar the appellants could not tell how many of each size cans the appellee would order and consequently could not proceed to fill the order or attempt to manufacture the cans until the appellee stipulated the sizes of cans and the style of openings.

The appellee could specify all No. 2 cans, small hole, at $1.85 per 100; or No. 2 cans, peach hole, at $1.90 per 100; or No. 3 cans, extra peach hole or the 2 5-16 inch opening, at $2.35 per 100, or he could specify any two of the sizes, or a portion of each of the sizes; but until he did furnish specifications the appellants could no nothing. And what applies to the two "bought and sold" notes as a whole applies with equal force to any portion of both or either of them. The appellants could go only as far as specifications were furnished by the appellee; beyond that the "bought and sold" notes were not enforceable contracts. Even if the defendant did notify plaintiffs in July that from that time on he would want only No. 3 extra peach hole cans except a few No. 2 large hole cans, that would only emphasize the fact that plaintiffs could do nothing on the contracts until the defendant specified the exact quantity of each size. Would not the cost of manufacturing the different size cans depend entirely upon the fluctuations of the market prices of the respective grades of tinplate used in the manufacture of each size can? How would a Court or jury fix the correct measure of damages in this case without making a different contract for the vendors than they made for themselves by injecting into the contracts a term which the parties themselves failed to incorporate?

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for the breach of contract. Kirwan & Riggs are manufacturers of tin cans, and Winfield W. Roberts is a packer of canned goods. On the 5th January, 1900, the former sold to the latter eleven hundred thousand tin cans of various styles and at various prices. The contract of sale is evidenced by bought and sold notes—one of which calls for seven hundred thousand and the other

for four hundred thousand cans.    The styles and prices and the rates of delivery are the same in each contract, and in both contracts the buyer was given the option to select the style of cans to be delivered.    There is some difference in the method of payment prescribed by the two contracts, but these are not important to consider in the view we have taken of this case.    Up to the 11th September, 1900, Roberts had called for and received about eight hundred thousand (800,000) of the eleven hundred thousand cans purchased under the bought and sold notes we have referred to.    Subsequent to that time no further calls were made by Roberts, and Kirwan & Riggs brought this suit in the Superior Court of Baltimore City to recover damages for his refusal to receive the balance of the whole number of cans sold by them to him, towit, 300,600 cans.

After all the testimony of both sides was before the jury the plaintiffs moved the Court to strike out certain testimony and offered three prayers.    The motion as well as the prayers were refused—and at the instance of the defendant the Court took the case from the jury because no evidence had been offered legally sufficient to entitle the plaintiffs to recover.

It does not appear that the propositions of law contained in the plaintiffs prayers were questioned by the learned Judge of the trial Court, but it is conceded that the ruling he made taking the case from the jury was based entirely on the ground that there was no completed contract and, therefore, no cause of action.    The judgment was in favor of the defendant and the plaintiff has appealed.

The single question, therefore, presented by this appeal is the propriety of the Court's ruling in granting the defendant's first prayer taking the case from the jury.    And the solution of this question depends upon the answer to the further question whether there was or not a complete and perfect contract entered into by the plaintiffs and defendant when they signed the bought and sold notes before referred to.

Inasmuch as the decision of this case below was based entirely on the case of *Wheeling Steel and Iron Co.* v. *Evans*, 97

Md. 305, let us see exactly what the facts of that case were and what our decision was. The Marble Company wishing to purchase 100 tons of tack plate from 12 to 17 gauge, regular width, wrote to the Steel Co. for quotations or best price for that kind of tack plate. On the 15th September, the Steel Company answered by mail giving prices for 100 tons of various grades of the material mentioned. On the 20th September the Marble Co. wired the Steel Co. as follows: "Enter our order for 100 tons tack plate, if at prices quoted on 15th; specifications to follow." To this the Steel Co. replied, "We have your telegram and have entered your order for 100 tons of tack plate at prices quoted by us." These papers constituted the contract sued on in *Wheeling Steel & Iron Co.* v. *Evans,* and we said, C. J. McSHERRY, delivering the opinion of the Court. "The telegram of September 20th was not a direct and unequivocal proposition, which, by acceptance could become a complete contract. So far as the price and the gross number of tons were concerned, the telegram may be treated as an acceptance of an antecedent offer; but the superaddition of the words 'Specifications to follow' left something essential for future action by the purchaser, and, therefore constituted, in legal effect, a *new and independent offer* requiring *an acceptance by the vendor.*" Upon this general proposition we held that the contract in the case cited was not complete—and that, therefore, no suit could be brought thereon. Now let us briefly examine the contracts sued on in the case before us.

In the first place it is not contended that the contracts here involved are imperfect or incomplete in any other respect save that they fail to provide for the various styles of cans sold. But they do expressly provide how these important and essential elements of the contract shall be ascertained. The 700,000 bought and sold note says "Deliveries to be made as buyers may order during the season of 1900—subject to the following schedule." Then follows the *percentage of the whole number*—(700,000) to be delivered in the respective months—that is to say the number of cans is definitely fixed and you the purchaser are to select the style. And so also the 400,000

note provides "Mr. W. W. Roberts (the defendant), to specify on first of each month *the style of cans during* said month"— with a provision setting forth *the number* of cans to be delivered each month.   In our opinion the plain construction of these contracts is that the parties agree not only to sell and purchase respectively a certain fixed *number* of cans, but they also agree that the purchaser shall select the styles of cans to be delivered.   All the other elements are provided for in the two papers constituting the contracts sued on—and there is nothing essential left for future action.   If the defendant agreed to specify the styles of cans to be delivered, as we have said he did, then it might well be said, if he could thus escape his obligation it would indeed be a perversion of justice—for it would permit him to take advantage of his own wrong.   It will be seen, therefore, that by the construction we have placed on the contracts before us every essential element was provided for including not only the right of the defendant to select the styles of cans to be delivered, but his duty to exercise that right reasonably and fairly.   Hence it follows that a failure on the part of the defendant to make the selections was of itself a violation of the contract, and that a situation is here presented for a fair application of the ruling adopted in *Jacobson* v. *Sullivane*, 152 Mass. 480 (9 L. R. A. 508.)   There was a contract for the sale of a clothing business to take effect at a future day, in which the vendor agreed to sell goods on his own account till that day, when he was to sell and and the purchasers to buy so much of the stock in trade "not exceeding $1,000 in value" as should then remain unsold.   The contract contained the proviso that the purchasers should "be bound to take only such goods as they themselves shall select."   It was held "that in view of the situation of the parties and the subject-matter and the purpose of the agreement that the clause in regard to selection was not intended to contradict the otherwise clear and definite provision of the contract as to the quantity to be sold and to nullify that part of the contract, but only to give the defendants the right to determine by selection what goods they would take to make up the quantity which they agreed to buy."

But again, even if it should be assumed *ex gratia*, that the contracts sued on gave the vendee a mere *option* to select and did not require him so to do, yet it must be conceded that after July, 1900, sometime before the defendant repudiated the contract, when he made a selection or specification of cans to be delivered, the contracts become complete. The testimony of the bookkeeper of the defendant is that in July the defendant told the plaintiff that from that time on all he would need would be extra peach hole cans, but that *possibly* he might use a *few* of the two-pound extra peach hole and the testimony of the defendant was to the same effect. And further that the plaintiff replied that it was all right and that he should have them. This, we think, was substantially an exercise of the power of selection. In *Dambmann Bros. & Co.* v. *Lorentz & Rittler*, 70 Md. 382, the well settled principle is recognized and applied—that an agreement may be so framed as to leave one party an option and thus impose no obligation on the other party until the option is exercised so as to create an obligation." But when the notice is given and the option exercised a binding obligation is imposed on both parties—on the part of the vendor to sell and deliver and on the part of the vendee to accept and pay the stipulated price. *Dambmann Bros.* v. *Lorentz & Rittler, supra.*

As we have already said the propositions of law contained in the plaintiff's prayers do not appear to have been passed upon but they were refused on the sole ground that there was no cause of action, the contract sued on not being complete. Nor were they discussed at the hearing nor in the brief of the appellee. We have not examined them critically but all of them, including the third which instructs the jury in regard to the proper measure of damages, appear to announce substantially correct principles of law.

The granting of the defendant's first prayer and the rejection of plaintffs' prayers constitute errors by reason of which the judgment must be reversed.

*Judgment reversed and new trial awarded.*

(Decided June 8th, 1904.)