RUFUS F. PARKS AND CLAUDE F. PARKS, TRADING AS R. F. PARKS AND SON, vs. THE GRIFFITH & BOYD COMPANY, A CORPORATION.

*Contracts*: *indefinite; option; offer—; acceptance.  Demurrer*: *first error.  Pleas*: *to what count applicable. Common counts and bill of particulars.*

Common counts for goods sold and delivered can not cover also claims for damages for the breach of a contract by the defendant to handle goods of the plaintiff exclusively.    p. 505

Where suit is brought on the common counts to recover the purchase price for goods sold and delivered, and the bill of particulars called for states the indebtedness to which the common accounts refer, no evidence can be given of any other demand or claim not included in the bill of particulars.    .

p. 505

.In case of a demurrer, the Court inspects the whole record, mounts up to the first fault, and gives judgment against the party committing the first material error of substance.  p. 499

A company engaged in the manufacture of fertilizers offered by a letter to sell Parks & Son during that fall 600 tons of

fertilizer; the letter gave a list of the various grades and brands, and the price per ton of each, with the various conditions as to shipments, discounts, etc.; among others, the condition that Parks & Son should handle the company's goods exclusively.   Parks & Son replied: "Your offer is hereby accepted, with the terms and conditions stated in this contract."   *Held,* that the agreement left the proportion of each grade, or what grade, wholly uncertain and indefinite; the contract was incomplete, and an action for its breach would not lie.                                               p. 503

The offer and acceptance created only an option, which was to be exercised before any binding obligation rested upon Parks & Son to buy.                                        p. 503

An agreement may be so framed as to leave a party an option, and thus impose no obligation on the other party until the option is exercised.   But when the notice is given and the option is exercised, a binding obligation is imposed on both parties.                                            p. 504

If the language of a plea sufficiently indicates to which count of the declaration it applies, it need not be expressly stated; but the better practice is to state exactly to what count a plea is in answer.                                         p. 506


*Decided February 28th, 1912.*


Appeal from the Circuit Court for Talbot County (PEARCE, C. J., ADKINS and HOPPER, JJ.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON and STOCKBRIDGE, JJ.

*Hope H. Barroll* and *Frank Gosnell* (with whom was *L. Wethered Barroll* on the brief), for the appellees.

*R. Groome Parks* (with whom was *T. Hughlett Henry* and *Lewin W. Wickes* on the brief), for the appellants.

PATTISON, J., delivered the opinion of the Court.

The appellee company, engaged in the manufacture of fertilizers in the City of Baltimore, in June, 1910, submitted to the appellants, dealers in fertilizers, of Chestertown, Maryland, the following written proposition:

"To Messrs. R. F. Parks & Son,
        Post-Office, Chestertown, County Kent, State Md.

"We will sell you the following named quantities of Fertilizers during Fall Season at prices and terms named below:

| Tons. | | Per Ton. | Bags. |
|---|---|---|---|
| | Bone Meal.................. | $28. | 200 |
| | Soft Ground Bone.......... | 24. | 167 |
| | Special Guano.............. | 22. | " |
| | Ammoniated Bone Phos..... | 19. | " |
| | Fish Bone & Potash......... | 19. | " |
| | Royal Potash Guano........ | 18. | " |
| | Harvest Queen............. | 17.50 | " |
| | Cereal Plant Food.......... | 16. | " |
| | Valley.................... | 15.25 | " |
| | Peerless.................. | 13.50 | " |
| 600 | Soluble 12-5 Mixture....... | 15.80 | " |
| | XX Potash Mixture........ | 14.40 | " |
| | Standard Potash Compound. | 13.75 | " |
| | Special Alkaline Bone Mixture.................... | 14.30 | " |
| | Special Grain Guano....... | 12.00 | " |
| | H. G. Acid Phos. 16%...... | 12.60 | " |
| | H. G. Acid Phos. 14%...... | 11.60 | " |
| | Original Superphos......... | 11.10 | " |
| | Gem Phosphate............. | 10.50 | " |
| | Dissolved Animal Bone...... | 22.00 | " |

And as much more as may be mutually satisfactory at the above price, F. O. B. Cars or Vessel at Baltimore, Md.

It is understood that accounts, notes or money arising from the sale or use of these fertilizers shall be the property of the Company until they shall have received full payment for all fertilizers shipped you.

To be shipped during fall '10, route M. D. & V. Ry. Co.
Shipping Point, Chestertown, County Kent, State Md.

Terms, cash, Dec. 1st, less 5%.
*You agree to handle our goods exclusively.*
Respectfully yours,

GRIFFITH & BOYD CO.,

per T. A. NOBLE."

Attached to and immediately preceding the above proposition is found in writing the following provision :

"All agreements are contingent upon strikes, fires and other delays unavoidable or beyond our control, and are subject to the approval of Griffith & Boyd Co."

To the above proposition the appellants replied as follows :
*"To Messrs. Griffith & Boyd Co.,*

*Baltimore, Md.*

"Your offer hereby accepted upon terms and conditions stated in this contract.
"Chestertown, Md., June 17th, 1910.     R. F. PARKS & SON."

In the record we also find the following letter dated as of the date of the letter of acceptance :
"BALTIMORE, MD., 6/17/10.

*Messrs. R. F. Parks & Son,*

*Chestertown, Md.*

GENTLEMEN : In consideration of your pushing the sale of our goods during the fall season we will allow you the following rebates from prices named you in contract No. 2013 bearing even date, namely, $1.50 per ton on all ammoniated goods, except Bone Meal, Soft Ground Bone and dissolved animal bone; $1.00 per ton on dissolved animal bone; and on Alkaline and Acid goods we will meet Martin & White Co. prices.
Very respectfully,

GRIFFITH & BOYD CO.,

per NOBLE."

On the 12th of December the appellee brought suit by titling against the appellants in the Circuit Court for Kent County, and on the 12th of February following filed its declaration, containing six common counts and two special

counts, each based upon the said written contract, that is, upon the written offer and acceptance heretofore given. Subsequently the case, at the instance of the appellee, was removed to the Circuit Court for Talbot County for trial, in which Court the declaration was amended. The six common counts were permitted to remain therein as in the original declaration, the eighth count was omitted therefrom, and the seventh count, which is a special count upon the alleged written contract, was amended so as to include the above letter of the appellee to the appellant dated June 17th, 1910, which did not appear in the original declaration.

In the seventh amended count the above contract is set out in *totidem verbis,* and in the assignment of its breach the declaration states: "The plaintiff offered itself ready and was ready and willing at all times, during the life of said contract, to carry the same out according to its terms and to deliver the goods at and for the prices named; but the defendants refused to accept the goods or to pay for same, whereby the plaintiffs suffered great loss and damage."

Before pleading to the amended bill the appellants demanded a bill of particulars as to the first six counts. This was furnished by the plaintiff, which shows an alleged indebtedness from the defendant to the plaintiff of $70.21, for guano sold and delivered by the plaintiff to the defendant, the items thereof being dated June 21st, 24th and 27th, 1910, respectively. The defendant then filed the following pleas:

"The defendants, by Lewin W. Wickes, T. Hughlett Henry & R. Groome Parks, attorneys, for pleas to the plaintiff's amended declaration says:

1. That they never promised as alleged.

2. That they never were indebted as alleged.

3. That the defendants paid the account filed by the plaintiff in compliance with the defendants' demand for a bill of particulars on the first six counts of the plaintiff's declaration.

4. That at the times the alleged written contract was executed, the plaintiff knew that defendants had contracted with and were to handle the goods and fertilizers of Martin & White Co., and that it was understood between the plaintiff and defendants that the defendants were to handle the goods and fertilizers of Martin & White Company and were not to handle the goods of the plaintiff exclusively."

To which the plaintiff replied by joining issue on the first and second, by traversing the third, and demurring to the fourth. The demurrer to the fourth plea was sustained, and upon a joinder of issue on the third replication the case was heard before a jury, which rendered a verdict in favor of the plaintiff for the sum of $1,861.79.

The docket entries disclose that the plaintiff and defendant each offered a number of prayers and that exceptions were noted by the defendants to the plaintiff's granted prayers. These prayers, however, are not in the record, nor does it contain the evidence offered. Therefore, the sole question submitted to us on this appeal is one of pleading, which was raised by the demurrer of the plaintiff to the defendants' fourth plea, which demurrer, as we have stated, was sustained.

It is a well-established rule of law that whenever in the progress of a case a demurrer is interposed to any pleading, it is the duty of the Court in passing upon it to inspect the whole record, and mounting up to the first fault, to give judgment against the party committing the first material error, if the fault be one of substance. *Poe*, Vol. 1, sec. 706; *Eakle v. Smith*, 27 Md. 480; *The Pres. Man. & Co., of the Wash. & Balto. Turnpike Road*, v. *The State*, 19 Md. 239; *Gusdorff* v. *Duncan*, 94 Md. 160; *The Osceola Tribe No. 11, I. O. R. M.*, v. *Schmidt*, 57 Md. 106; *State, use of Buckey*, v. *Culler*, 18 Md. 430. Following this rule, we will inspect and carefully examine the plaintiff's declaration to ascertain if, by the above test, it is legally sufficient.

As the seventh count of the declaration is based upon the alleged written contract, created as it is contended by the

written offer of the plaintiff and the acceptances thereof by the defendants, we will first inquire into the validity and binding effect of such alleged contract.

In the case of the *Wheeling Steel and Iron Company* v. *Evans,* 97 Md. 305, which was an action of trespass on the case, instituted by the Wheeling Steel and Iron Company against Evans for breach by the latter of his alleged warranty of the authority of William J. Driscoll to contract on behalf of the Evans Marble Company for the purchase of one hundred tons of tack plate for the manufacture of tacks, the Evans Marble Company on September 13th, 1899, wrote the Wheeling Steel and Iron Company to quote its best price on one hundred tons of tack plate from 12 to 17 gauge. The latter company on September 15th replied: "We quote you for one hundred tons tack plate * * * Nos. 12 and 14, $2.72, f. o. b. Wheeling. No. 15 and 16, $2.80 * * * We make this quotation subject to wire reply not later than Monday, the 18th inst." On the 20th the Marble Company replied thereto by telegram, saying: "Enter our order for 100 tons tack plate if at prices quoted on 15th, specifications to follows." To which telegram the Wheeling Steel and Iron Company replied on the 22nd of September, saying: "We have your telegram of the 20th inst., and have entered your order for 100 tons of tack plate at prices quoted by us on the 15th inst."

Thereafter the Marble Company refused to take the tack plate and the suit, as stated, followed. In speaking of this alleged contract, created by the correspondence above given, JUDGE McSHERRY, in delivering the opinion of the Court, said: "The letter of September the fifteenth quoted the prices of four grades of tack iron, viz: Nos. 12 and 14 at $2.72 per one hundred pounds, and Nos. 15 and 16 at $2.80 per one hundred pounds; whilst the telegram of the twentieth simply directed the Steel and Iron Company to enter the Marble Company's order for one hundred tons of tack plate, 'specifications to follow.' No specifications, that is to say, no designation of the number of tons of any of the four grades, was ever furnished. If the purchaser had the option

to specify for any or all of the four gauges, it is clear that until such specifications had been made there could be no definite agreement; because it was the purchasers privilege and right to designate one hundred tons of No. 12, or of No. 14, or of No. 15, or of No. 16; or twenty-five tons of each gauge, or any other of a vast multitude of different proportions of the whole four gauges, or of any two or three of them. The price of each gauge was definite; the total quantity of tons was definite, and the times of delivery were definite; but the proportion of each gauge, as well as which of the four would be required, is wholly indefinite and uncertain. As to that element of the alleged contract there was obviously no *consensus ad idem*. The telegram of September the twentieth was not a direct and unequivocal acceptance of any definite and unequivocal proposal which by acceptance could become a complete contract. So far as the price and the gross number of tons were concerned the telegram may be treated as an acceptance of an antecedent offer, but the superaddition of the words 'specifications to follows' left something essential for future action by the purchaser, and therefore constituted, in legal effect, a new and independent offer requiring an acceptance by the vendor. The test of this lies in considering what would have been the measure of damages in a suit instituted by the vendor against the vendee for a breach of the alleged contract. Would the vendor have been entitled to recover the difference between the contract price and the market price of the whole one hundred tons, reckoned on the basis of $2.80 per hundred pounds; or on the basis of $2.72 per hundred pounds; or on some other basis founded on an arbitrary apportionment of the whole number of tons amongst the four different gauges? And would not the difficulty of fixing a correct measure of damages have sensibly increased if the market price of the four gauges had fallen in an unequal ratio and in different rates of percentage? What quantity of each gauge could a Court or jury declare that the vendee ought to have specified? If either Court or jury had undertaken such a task it would

have supplied a term of the contract which the parties themselves failed to incorporate, and manifestly such a proceeding would have been unwarranted."

In the case before us the appellee offered to sell to the appellants "the following *named quantities* of fertilizer during the *fall season,* the prices and terms named below." It then names the various grades of fertilizers so offered, numbering twenty, with the prices following each grade so named, ranging in amount from $10.50 to $28 per ton, and the prices therefor all differing, with the exception that two of the grades are offered at twenty-two dollars and two at nineteen dollars per ton. Following this were certain conditions in the offer, and to that offer the appellants replied saying: "Your offer hereby accepted upon terms and conditions stated in this contract." It is true that in this acceptance it did not provide that specifications would follow, as in the case from which we have quoted (*Wheeling Steel Co.* v. *Evans*), but, nevertheless, specifications or designation of the grades desired by the appellants were necessary before the contract or agreement of sale became definite, certain and complete. It was the appellants' privilege and right to designate six hundred tons of any one of the grades of fertilizer named, or an equal number of tons of each grade, or any other of a "vast multitude of different proportions" of the whole twenty grades, and as we have said, this right or privilege was left to be exercised before the agreement or contract of sale became definite and complete. In this case, as in the *Wheeling Steel Co.'s case,* the price of each grade was definite, the total quantity of tons was definite, and the time of delivery was definite, but the proportion of each grade as well as which of all would be required, is wholly indefinite and uncertain. The difficulty found in the *Steel Company's case* as to the measurement of damages exists in this case, and it would seem that the test there applied is the proper one to be applied here. What would be the measure of damages here? Upon what grade of fertilizer or upon what proportion of all the grades, differing so in prices and

thus necessarily affecting the amount of damages, should such damages be placed? As was said in the *Wheeling Steel Company's case*, if either Court or jury should undertake to declare what grades of fertilizer the vendees should specify, it would be supplying a term of the contract which the parties themselves have failed to incorporate. The contract, we think, is incomplete and thus the seventh count of the declaration based thereon is bad.

This case is unlike the case of *Kirwan* v. *Roberts*, 99 Md. 341. In that case the contract of sale was evidenced by bought and sold notes, and this Court in construing those notes held that it was agreed "by the purchaser that he should select the styles of cans to be delivered," and then stated that "if the defendant agreed to specify the style of cans to be delivered, as we have said, it was his duty to exercise that right reasonably and fairly. Hence it follows that a failure on the part of the defendant to make the selection was of itself a violation of the contract." Moreover, in that case the defendant, in part, exercised the option by ordering and receiving upon the alleged contract a large number of cans, but refused to order more, and the Court in speaking of this feature of the case, said: "But again, if it should be assumed *ex gratia*, that the contracts sued on gave the vendee a mere option to select and did not require him to do so, yet it must be conceded that after July, 1900, sometime before the defendant repudiated the contract, when he made a selection or specification of cans to be delivered, the contracts became complete."

In this case there was no partial exercise of the option as disclosed or alleged by the declaration, nor was there any agreement on the part of the defendants that they should at any time, order any of the grades of fertilizer. As we construe the offer and acceptance, they created only an option which was to be exercised before there was a complete binding obligation resting upon the appellants. It is a well-settled principle of law, "that an agreement may be so framed as to leave one party an option and thus impose no

obligation on the other party until the option is exercised so as to create an obligation. But when the notice is given and the option exercised a binding obligation is imposed on both parties—on the part of the vendor to sell and deliver, and on the part of the vendee to accept and pay the stipulated price." *Kirwan* v. *Roberts, supra; Dambmann Bros. & Co. v. Lorentz & Rittler,* 70 Md. 382.

It is contended, however, by the appellee that although this seventh count of the declaration be bad, the remaining counts of the declaration are good, and as section 15 of Article 5 of the Code of Public General Laws provides, "Nor shall any judgment or verdict be reversed if there be one good count in the declaration," the judgment therefore in this case cannot be reversed.

It will be remembered that before pleading to the declaration, the defendants demanded a bill of particulars as to the first six counts—common counts—of the declaration, which was furnished them. By the statement so furnished it is shown that the alleged indebtedness thereunder amounted only to $70.21 and was for fertilizer shipped June 21st, 1910, to C. W. Rinehart, Tolchester, Md., and J. H. Baker, Quaker Neck, Md. In the bill of particulars no reference is made to the alleged contract nor does it disclose that the common counts were inserted in the declaration to recover, for fertilizer sold and delivered under it. The statement contains the following memorandum "Terms less 5% cash Dec. 1st, 1910, Fall acct.," and shows the shipments were made four days after the acceptance of the offer referred to, but we do not think it is disclosed by these facts that such counts were so inserted in the declaration to recover the price of goods sold and delivered under the alleged contract, when it appears by the statement that the shipments were made long in advance of the time of shipment mentioned in the contract, and were made to places other than Chestertown the shipping point named in such alleged contract. There is nothing in the bill of particulars inconsistent with

the fact that the goods were delivered under an order previously given, or under a previously existing contract or agreement. It is clear, however, that the common counts were inserted in the declaration to recover the price of fertilizer that had been sold and actually *delivered* and were certainly not inserted to recover damages for breach of contract by the defendants in their not handling the goods of the plaintiff exclusively or for their refusal and failure to accept and pay for goods said to have been sold them under said alleged contract.

Upon being furnished the bill of particulars the defendants in addition to the pleas of "never promised as alleged" and "never was indebted as alleged", filed the further plea that they "had paid the account filed by the plaintiff in compliance with the defendants' demand for a bill of particulars on the first six counts of the declaration." In addition to the above pleas the defendants filed their fourth plea, which as we have said, was demurred to by the plaintiff and the demurrer sustained by the learned Court below.

The defendants contend in support of their demurrer, that the fourth plea was to the whole declaration and therefore as the common counts in the declaration are good, the demurrer to that plea was properly sustained even though it should be found that the seventh count of the declaration is bad. It is true that the fourth plea does not specifically state that it is a plea to the seventh count of the declaration, but it is sufficiently shown by its language that it was to be a plea to that count only. One of the provisions of the alleged written contract in this case was that the appellant should handle the goods of the appellee exclusively, and although the declaration does not allege any breach of the contract in this respect, the defendants in the fourth plea state "That at the time the alleged written contract was executed, the plaintiff knew that defendants had contracted with and were to handle the goods and fertilizers of Martin & White Co., and that it was understood between the plaintiff and defend-

ants that the defendants were to handle the goods and fertilizers of Martin & White Co. and were not to handle the goods of the plaintiff exclusively." It is thus seen from the language of this plea that it is in answer to the seventh count of the declaration and has no reference or application to the common counts which as we have said were inserted to recover the purchase price of goods actually sold and delivered amounting in the aggregate to $70.21. The issue attempted to be raised by this plea could in no way effect the plaintiff's right to recover under the common counts for the goods sold and delivered, even though sold under the contract. It is unnecessary in our opinion that a plea, to be a plea to one count only of the declaration, should expressly state that it is a plea to such count, although it is the better practice to do so, if from the language of the plea it is conclusively shown that it is a plea to such count only and that it has no reference or application to any other count of the declaration. Our predecessors in the case of *Crain* v. *Yates,* 2 H. & G. 336, said: "When a plea is only intended for a part of the declaration, the rule is, it must not cover the whole, but must *ascertain* the part to which it is applied, or the plaintiff may demur." It does not say it shall specifically state in the plea that it is intended as a plea to a particular count of the declaration and not to the whole, but that it must *ascertain* the part to which it is applied. It may be ascertained by expressly stating that it is a plea to such particular count, or it may be ascertained or *made known* from the language used in the plea showing conclusively that it was pleaded in answer to such count and to it alone. We think the fourth plea was to the seventh count alone and not to the whole declaration. This being true the Court below was specifically called upon to inspect the seventh count of the declaration and to pass upon its legal sufficiency, and before they could sustain the demurrer to the plea they were required to find that this count of the declaration was sufficient. As they sustained the demurrer

to the plea, they virtually decided that this count of the declaration was good; the effect of which is the same as if the defendants had specifically demurred to this count of the declaration and the Court had overruled the demurrer.

Taking this view of the action of the Court in sustaining the demurrer and thereby declaring the seventh count of the declaration to be good, we do not think the fifteenth section of Article 5 of the Code of Public General Laws can have the effect of preventing a reversal of this judgment.

The common counts were inserted as we have said for the purpose of recovering the purchase price of goods sold and delivered, while it is under the seventh count alone that recovery could be had for the alleged damages suffered by the plaintiff in the failure and refusal of the defendants to accept and pay for goods said to have been sold them under the contract. Therefore if the seventh count is bad there is no *good count* in the declaration under which such damages could be recovered.

It is shown by the amount of the verdict $1,861.79 that the jury considered not only the claim for which the common counts were inserted to recover, to wit, the sum of $70.21, but likewise the claim for damages sought to be recovered under the seventh count, which we have said is bad.

As we have said, the record does not contain the evidence in this case; therefore we do not know what evidence was before the lower Court, and it is because of the omission of such evidence in the record before us that it is suggested by the appellee that the verdict might have been for goods bargained, sold and delivered in excess of the few tons set out in the bill of particulars, or it may have been for money lent, money paid, etc. The bill of particulars states the indebtedness for which the six common counts are brought to recover, and this will preclude the giving in evidence of any other demand or claim not included in it. *Scott v. Leary,* 34 Md. 389. Therefore, to assume that this large judgment was obtained upon these counts of the declaration, we must

further assume that the rights of the defendants to hold the plaintiff to the claim made thereunder was waived by them, which we think we are not called upon to assume in determining this case.

Therefore, from what we have said we think the judgment in this case should be reversed and new trial awarded.

*Judgment reversed, with costs to the appellants, and new trial awarded.*