HOLLAND-COOK MFG. CO v. CONSOLIDATED WAGON AND MACHINE CO.

No. 2921.   Decided December 5, 1916 (161 Pac. 922).

1. APPEAL AND ERROR—REVIEW—FINDINGS. Findings of fact in a law case based upon conflicting evidence are conclusive on appeal.   (Page 46.)

2. SALES—VALIDITY OF CONTRACT—CERTAINTY. A memorandum of agreement to purchase "3 carloads Crown silos, sizes to be specified within two weeks," was not too uncertain to support action for damages for breach, for the reason that the sizes were left undetermined, but was an agreement for the delivery of a definite amount, imposing a duty upon the buyer to specify the sizes it might desire.   (Page 47.)

3. SALES—ACTION FOR BREACH BY BUYER—MEASURE OF DAMAGES. Where defendant refused to perform his contract for the purchase of three carloads of silo material which had not been manufactured at the time of the breach, as the plaintiff was not bound to manufacture the material and tender it to defendant, the measure of damages was the difference between the cost of manufacturing the silo material and the price agreed to be paid by the defendant therefor, less the freight which the plaintiff had agreed to deduct from the price, being equal to the profits the plaintiff would have derived from the contract if the defendant had performed.   (Page 49.)

4. SALES—ACTION FOR BREACH—MEASURE OF DAMAGES. Where finished silo material purchased by the defendant was to be prepared so that it could be assembled into any size of silo that defendant might desire, as the plaintiff's profits would have been the same regardless of the size of the silo constructed, it

was immaterial, in determining the damages for breach of the contract, that the court adopted the standard size silo. (Page 50.)

5. EVIDENCE—OPINION EVIDENCE—CONCLUSION. In an action for breach of a contract, the court did not err in striking an answer which consisted of a mere conclusion of the witness. (Page 51.)

6. APPEAL AND ERROR—PRESENTATION IN LOWER COURT OF GROUNDS FOR REVIEW. In an action for breach of contract, where counsel duly assigned the court's ruling on measure of damages as error and argued the assignment in the printed brief, and orally, the question was properly before the appellate court, though not argued in the court below. (Page 52.)

7. SALES—ACTION FOR BREACH—MEASURE OF DAMAGES. Where the price to be paid for finished silo material was twenty per cent. from the list price, less the freight, in determining the damages for breach of the contract by the buyer the freight should be deducted from the agreed price, and not from the list price. (Page 52.)

Appeal from District Court, Third District; *Hon. F. C. Loofbourow,* Judge.

Action by Holland-Cook Manufacturing Company against the Consolidated Wagon and Machine Company.

Judgment for plaintiff. Defendant appeals.

MODIFIED and affirmed, as modified.

*Stewart, Bowman, Morris & Callister* for appellant.

*Booth, Lee, Badger & Rich* for respondent.

FRICK, J.

The plaintiff, a corporation, sued the defendant, also a corporation, to recover damages for breach of contract. It is, among other things, alleged in the complaint that the defendant had refused to receive three carloads of silos which it had ordered or purchased from the plaintiff. The defendant denied the contract of purchase, and, as an affirmative defense, averred that if a contract was entered into it was oral

and void under the statute of frauds.   A trial to the court,
without a jury, resulted in findings and judgment in favor
of the plaintiff, and the defendant.appeals.

The place of business of the plaintiff corporation is in
Tacoma, Wash., where it is engaged in the manufacture of the
material for wooden silos, and the principal place of business
of the defendant corporation is at Salt Lake City, Utah, where
it is engaged in the business of selling and distributing all
kinds of farm machinery and other implements.   During the
early part of the year 1914, the defendant, through its so-
called sales manager, B. P. Critchlow, entered into correspond-
ence with the plaintiff for the purpose of ascertaining prices
and terms on the silos manufactured by it.   All of said cor-
respondence was produced in evidence at the trial and is set
out in the bill of exceptions.   Pursuant to the letters written
by the sales manager as aforesaid, the president of the plain-
tiff, in April, 1914, came to Salt Lake City and conferred with
the defendant respecting the purchase of silos by it.   The
evidence shows that at that time Mr. Holland met and con-
ferred with the sales manager and the assistant general man-
ager of the defendant.   The three discussed the question
about purchasing silos manufactured by the plaintiff.   The
evidence shows without dispute that from lumber and other
material the plaintiff manufactured the different parts of
which the silos were made; that it did not keep in stock the
manufactured articles, but prepared them upon order; and
that it generally sold the manufactured or prepared material
to dealers throughout the western country in carload lots.
The purchasers of the material for silos would assemble or
put together the material manufactured or prepared by the
plaintiff, and would thus build up or construct the silos at
such places and in such sizes as was desired.   The material
for the silos was prepared in such fashion that out of the
same material any particular size that might be desired by
the purchaser could be constructed.   After a full discussion
between the defendant's sales manager and its assistant gen-
eral manager and Mr. Holland of all the matters pertaining
to the silos manufactured by the plaintiff, the defendant's
sales manager entered into a memorandum of agreement with

Mr. Holland for the purchase of three carloads of silos. The agreement was entered into in defendant's place of business, and, in view that there were no order blanks on hand, Mr. Holland used an acceptance blank in preparing the memorandum of agreement. The memorandum aforesaid reads as follows:

"An acknowledgment of your order as we understand it. If correct, advise us immediately. All orders subject to strikes or accidents beyond our control.

"Your order No. ———. Date Apr. 11, 1914.

"Ship to Consolidated Wagon & Machine Co.,

"Address Salt Lake, Utah.

"Ship when ———.

"Via ———.

"Our order No. 7716. Date Apr. 11, 1914.

"Invoice to Consolidated Wagon & Machine Co.

"Address Salt Lake, Utah.

"Freight allowed, 40c per 100 lbs.

"Terms 2% 10 days—60 days net.

"3 carloads Crown silos. Sizes to be specified within two weeks. *20% from our list.*

"I suggest that in making these specifications that large sizes 16x32 or larger in spliced staves be ordered; then smaller sizes can also be made from same stock.

T. S. Holland.

"For Idaho Falls, Twin Falls and Salt Lake Territory, O. K. B. P. Britchlow, Sales Mgr. 4-11-14." (Italics ours.)

It is contended that the memorandum is insufficient to meet the requirements of the statute of frauds. That conclusion is based upon the contention insisted on by the defendant that the words in italics, namely, "20% from our list," were not in the memorandum when it was signed by the sales manager of the defendant. It is insisted by defendant's counsel that with the four italicized words omitted from the memorandum it is insufficient to meet the requirements of our statute of frauds for the reason that the price or consideration for which the property in question was sold is an essential element of the memorandum. Mr. Holland, who was a witness for the plaintiff, disputes the defendant's contention. He testified that the words were in his own hand-

writing, that he wrote the words in the typewritten memorandum, and that he wrote them in before the sales manager placed his o. k. and signature thereto. The sales manager, however, testified that the italicized words were not in the memorandum when he signed it. The court, upon that conflict of evidence, found the fact against the defendant, and, as this is a law case, we are bound by the finding of the court, inasmuch as it is based upon conflicting evidence. In view that the assumed omission of the four italicized words is the only reason defendant's counsel urge why the memorandum is insufficient, and in view that the court found that those words were written in the memorandum and were a part thereof when it was signed by the sales manager, counsel's contention cannot prevail.

It is next urged that the memorandum or contract is too uncertain to be enforced for the reason that the sizes of the silos were not agreed upon by the parties and that that matter was left undetermined by reason of the following clause in the memorandum, namely, ''Sizes to be specified within two weeks.'' It is contended that, inasmuch as the sizes of the silos that the defendant might desire were to be specified or designated after the memorandum was signed, the agreement was left incomplete in a material matter; that is, that the minds of the parties had not met upon the particular sizes of silos that the defendant might desire, and hence it had not purchased any silos. Is that contention sound?

What is it that the defendant purchased? By referring to the memorandum it will be seen that it purchased ''three carloads Crown silos.'' Defendant was given two weeks' time, however, in which to determine the sizes of silos it desired. The evidence is without dispute that from the material contained in the three carloads purchased by the defendant all sizes of silos manufactured could be constructed. If that be so, we cannot see how the sizes of the silos were material. For the purposes of this decision we shall, however, treat the sizes of the silos as being material. In doing that, however, we do not concede counsel's contention that the memorandum was left incomplete and so uncertain as to be unenforcable.

48          SUPREME COURT OF UTAH.          [Dec.

Holland-Cook Mfg. Co. v. Consol. Wag. & Mach. Co., 49 Utah 43.

In giving defendant two weeks in which to designate the sizes of silos that it might desire, the memorandum was left neither uncertain nor incomplete. The defendant had, in explicit terms, purchased three carloads of silos. It also agreed to designate or specify the sizes it might desire within two weeks; that is, within two weeks from the date of the memorandum. To designate the sizes of silos, if it desired particular sizes, was a duty or obligation imposed on and assumed by the defendant, and it was required to comply with that stipulation precisely the same as with any other material one mentioned in the memorandum. It was not necessary that the parties should have agreed upon the particular sizes at the time the memorandum was entered into if they provided a method by which that matter could be definitely determined at any time before the contract was to be executed by the plaintiff. They did that, and that was sufficient. The defendant had purchased three carloads of silos with the privilege of specifying particular sizes, and it was bound just as much to designate the sizes as it was to pay for the three carloads of silos purchased by it. To that effect are the authorities. The following cases will be found precisely in point. *George Delker Co.* v. *Hess Spring & Axle Co.,* 138 Fed. 647, 71 C. C. A. 97; *Gardner* v. *Deeds & Hirsig,* 116 Tenn. 128, 92 S. W. 518, 4 L. R. A. (N. S.) 740, 7 Ann. Cas. 1172; *Hinckley* v. *Pittsburgh, etc., Co.,* 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; *Kirwan & Riggs* v. *Roberts,* 99 Md. 341, 58 Atl. 32; *Jacobson* v. *Sullivan,* 152 Mass. 480, 25 N. E. 973, 9 L. R. A. 508. In the first case cited, counsel contended that the contract was too indefinite and uncertain to be enforced because the purchaser had agreed to designate within a specified time the various sizes and varieties of springs and axles that should be manufactured and delivered under the contract. It was there contended, as here, that inasmuch as the selection was to be made after the contract was entered into therefore nothing had been selected. The court, in discussing the question, said:

"These contracts are definite as to the quantity of springs and axles, and as to the price and time of delivery, and nothing remained but the specification by the defendant of the sizes and varieties. A

failure on the part of the defendant to keep its agreement to make these specifications as provided is the only way in which the contracts could be rendered uncertain; and it would be illogical to hold that by a breach of that part of the contracts the defendant could relieve itself of all the obligations it had assumed, and take the springs and axles only so long as the price of steel advanced, and, by failing to specify when the market declined, throw the loss upon the plaintiff. These were not options given to the defendant, but definite agreements by it for the purchase of the property mentioned, and the provisions for the specifications to be furnished did not make them so uncertain that an action did not lie for their breach. *Hinckley* v. *Pittsburgh Steel Co.,* 121 U. S. 264, 7 Sup. Ct. 875, 30 L. Ed. 967; *Kimball Bros.* v. *Deere, Wells & Co.,* 108 Iowa 676, 77 N. W. 1041; *Ault* v. *Dustin,* 100 Tenn. 366, 45 S. W. 981; *Minn. Lumber Co.* v. *Coal Co.,* 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529. The defendant cites many cases which are claimed to sustain its view, but they lack the agreement to take a quantity of goods, which is made certain by the contract itself, or could be made certain by evidence; thereby differing from the contracts here, where a definite quantity is fixed, and only its apportionment is to be made by the defendant."

In the case of *Hinckley* v. *Pittsburgh, etc., Co., supra,* the decision is correctly reflected in the headnote, which reads:

"The defendant agreed, in writing, to purchase from the plaintiff rails to be rolled by the latter, 'and to be drilled as may be directed,' and to pay for them $58 per ton. He refused to give directions for drilling, and, at his request, the plaintiff delayed rolling any of the rails until after the time prescribed for their delivery, and then the defendant advised the plaintiff that he should decline to take any rails under the contract. *Held*: (1) The defendant was liable in damages for the breach of the contract. (2) The plaintiff was not bound to roll the rails and tender them to the defendant. (3) The proper rule of damages was the difference between the cost per ton of making and delivering the rails and the $58."

We shall not quote, neither is it necessary to do so, from any of the other cases.

It is, however, further contended that the court erred in applying the measure of damages. The court found that the defendant had breached the contract, in that it had renounced the same after the plaintiff had purchased at least a large portion of the lumber which was to be used in the silos purchased by the defendant and before the lumber    3

had actually been prepared or manufactured into finished silo material. The court allowed plaintiff as damages the difference between the cost of manufacturing the three carloads of silo material and the price agreed to be paid by the defendant therefor, less the freight which plaintiff had agreed to deduct from the price. In other words, the court allowed the plaintiff the profits it would have received from the three carloads of silo material if the defendant had in all respects complied with the terms of the written memorandum. Defendant's counsel contend that the correct measure of damages in such case is the difference between the market value of the articles sold and the price agreed to be paid therefor. While the authorities are not entirely in harmony, yet the great weight of authority sustains the ruling of the district court. Where, as here, the article contracted for is not in esse, but is to be manufactured, and the purchaser refuses to comply with his contract, the seller is not bound to manufacture the article and tender it to the purchaser, but he may sue the purchaser for damages for breach of contract, and the measure of damages and of his recovery is the difference, if any, between the cost of manufacturing the article or property purchased and the price agreed to be paid therefor by the purchaser. In other words, the profits that the seller would have derived from the contract in case the purchaser had fully performed the same is the measure of damages. The cases hereinbefore cited clearly lay down and support the rule just stated. In addition to the cases already cited, see, also, *Kingman & Co.* v. *Western Mfg. Co.*, 92 Fed. 486, 34 C. C. A. 489, and *Kimball Bros.* v. *Deere Wells & Co.*, 108 Iowa 676, 77 N. W. 1041, where the rule just stated is discussed and approved. The cases cited by counsel for the defendant upon this proposition can hardly be said to decide the real question involved here, and, for that reason, are not controlling.

In this connection, it is also contended that the court erred in determining the damages by allowing the profits that the plaintiff would have derived from what the court 4. found to be the standard size silo. There is no merit to that contention, for the reason that the court determined

what profit the plaintiff would have made if the defendant had actually received and paid for the three carloads of silo material. The evidence is clear that the profits would have been precisely the same to the plaintiff, regardless of the size of the silos that might have been selected or designated by the defendant. As before stated, the three carloads of material purchased by the defendant was to be prepared so that it could have been assembled into any size of silos that the defendant might desire. If large size silos had been constructed, there would have been fewer of them, and, if small sized ones had been desired, there would have been more of them in the three carloads; but the profits to the plaintiff on the three carloads would have been precisely the same whether larger or smaller sizes, or some of both kinds, had been constructed out of the three carloads of material which the defendant purchased from the plaintiff. All that the court said, therefore, concerning a standard size silo, has, and can have, no real influence upon the result, or the correctness thereof.

It is also insisted that the court erred in striking a certain answer of Mr. Critchlow, the sales manager, who was a witness for the defendant. The answer was a mere conclusion of the witness, and the court did not err in striking it. But even though it were conceded that the court should not have stricken the answer, yet striking it in no way prejudiced the defendant.

Counsel also urge that the sales manager had no authority to enter into the agreement to purchase the three carloads of silos. Without setting forth the evidence upon that question, it must suffice to say that if he court, under the evidence in this record, should hold that the sales manager and the assistant general manager acted without authority, and that therefore the defendant was not bound by their acts, the transaction of business with corporate officers or agents would become hazardous indeed, and such a holding would prove very mischievous in the long run. We unhesitatingly state that the record leaves no doubt respecting the authority of the sales manager and the assistant general manager.

Defendant further insists that the court erred in deter-

mining the amount of damages by deducting the amount allowed the defendant for freight from the list price, instead of deducting the same from the price agreed to be paid for the silos after the twenty per cent. from the list price was deducted. Plaintiff's counsel suggest that this question is not properly before us because it was not argued in the court below. The mere fact that defendant's counsel did not present or argue a question of this character in the court below, in view that they otherwise properly raised it, does not prevent them from presenting it to this court. Counsel have duly assigned the court's ruling in this regard as error, and they argue the assignment in their printed brief, and orally as well. The question therefore is: Did the court err in deducting the amount allowed for freight from plaintiff's price list, instead of deducting the same from the amount the defendant agreed to pay for the three carloads of silos?

So far as the defendant was concerned, the list price was material only for the purpose of determining the price it agreed to pay, and the plaintiff agreed to accept, for the silos. A fair construction of the agreement in which the plaintiff agreed to make an allowance for freight, we think, requires that the deduction for freight shall be made from the price actually agreed upon and not from the list price, which was twenty per cent. higher and would thus, to some extent at least, increase the amount the defendant would be required to pay for the silos. We think the court should have deducted the allowance for freight from 80 per cent. of the list price, which was what the defendant agreed to pay, and not, as was done, from the full list price, which was 20 per cent. more than the agreed price for the silos. The difference between what the court should have allowed and actually allow as damages to the plaintiff is, however, a mere matter of computation and amounts to just $144. While plaintiff's counsel did not concede that the court had erred in the particular just stated, they, however, in advance, consented that we might correct the error, if we found it to be such, by deducting the amount before stated from the amount of the judgment.

There are a number of other assignments, but none of them

is of sufficient importance to require further discussion. The record discloses that the case was ably tried and as ably defended, and the trial court fully and fairly considered all the questions that were raised by counsel.

It is not necessary to reverse the judgment, nor to enter a conditional order granting a new trial, for the reason that plaintiff's counsel have agreed that the difference is $144. In view of counsel's consent, it is ordered that the plaintiff remit from the judgment, as of the date it was entered in the district court, the sum of $144, and the judgment, as thus modified, will be affirmed.

For the reasons stated, therefore, the judgment appealed from is modified by deducting from the amount thereof the sum of $144 as of the date the judgment was entered in the court below, which reduces the amount of the judgment to the sum of $1,604.34, and to that extent and for that amount it is affirmed. Neither party to recover costs in this court.

STRAUP, C. J., and McCARTY, J., concur.