## TANNER v. JOHNSON

No. 2992.  Decided May 8, 1917.  (165 Pac., 466.)

1. CONTRACTS—BREACH OF CONTRACT TO THRESH GRAIN—EVIDENCE.
   In an action to recover damages for breach of an oral executory
   agreement under which plaintiff was to thresh defendant's grain,
   evidence and admissions of pleadings *held* to make a prima facie case
   for plaintiff.  (Page 25.)

2. CONTRACTS—CONTRACT TO THRESH GRAIN—RIGHT TO TERMINATE.
   That defendant had notified plaintiff of the termination of contract
   before the time fixed for its performance did not preclude recovery.[1]
   (Page 25.)

3. DAMAGES—RENUNCIATION OF CONTRACT TO THRESH GRAIN.  The
   measure of damages for renunciation of a contract to thresh grain
   was the net profit thresher would have realized had he been permitted
   to do the threshing.  (Page 25.)

Appeal from District Court, Third District; *Hon. Geo. G.
Armstrong*, Judge.

Action by J. J. Tanner against Henry Johnson.

From a judgment of nonsuit and from an order denying
his motion for a new trial, plaintiff appeals.

REMANDED, with directions to grant a new trial.

*Evans, Evans & Folland* for appellant.

*L. L. Baker and W. S. Marks* for respondent.

CORFMAN, J.

Plaintiff brought this action against the defendant in the
district court of Tooele county to recover damages alleged to
have been sustained because of the renunciation of an oral ex-
ecutory agreement.  Briefly stated, the complaint alleges that
an agreement was entered into between the plaintiff and the
defendant whereby the defendant employed the plaintiff to
thresh the grain raised upon defendant's farm for the season
of 1915; that the grain was to be threshed on or about October

---

[1] *Holland-Cook Mfg. Co.* v. *Con. W. & M. Co.*,  49 Utah, 43, 161 Pac.
922.

1, 1915, in consideration of which the defendant was to pay to plaintiff a reasonable toll of 8½ bushels for each 100 bushels or fraction thereof threshed; that on or about the 14th day of September, 1915, the defendant repudiated the contract thus entered into, to plaintiff's damage in the sum of $300, for which sum plaintiff prayed judgment and costs.

The answer, in substance, admits the agreement, and affirmatively alleges that plaintiff represented to defendant he would thresh his grain in a first-class manner, and with a machine that would do first-class work so that there would be little, if any, loss, and that the grain would be threshed at the agreed time without unnecessary delay; that defendant canceled and terminated the contract on or about September 10, 1915, on receiving information from various sources that the machine with which plaintiff intended to do the threshing did not do satisfactory work, in that it did not thresh grain clean, and that large losses were being sustained by various persons for whom plaintiff had threshed and was threshing; that great delays were continually occurring which caused great expense and annoyance for any person for whom plaintiff attempted to thresh grain; and that plaintiff sustained no loss whatever by reason of defendant not permitting plaintiff to thresh his grain.

At the trial, which was to the court without a jury, the defendant, in brief, testified, when called as a witness for the plaintiff, that he employed plaintiff to thresh the grain raised in 1915, and afterwards canceled the employment; that the grain raised by him in 1915 was threshed by another than the plaintiff, and that the value of the toll for the threshing would have amounted to $194 at the price fixed under his agreement with plaintiff; that it was the understanding that if the plaintiff was to do the threshing he was also to do the threshing for others in the vicinity; that plaintiff threshed for defendant in 1914, and had inquired how the defendant liked the job. "I told him it was very good. He then asked me, he says, 'Could I have your threshing for 1915.' I said, 'Yes; if your job is as good as it has been this year you can have it.'"

The plaintiff testified in his own behalf that the net profit to him would have amounted to $122, and that there was no understanding between him and the defendant that he was to do the threshing for others in the vicinity.

At the conclusion of plaintiff's evidence a nonsuit was granted on the application of the defendant. A motion for a new trial was made and denied. Plaintiff appeals.

The only question for this court to determine is whether the plaintiff, when he rested at the trial, had under the admissions of the pleadings and the evidence, established a prima facie case. It is to be observed that the answer of the defendant admits the contract sued upon with some slight qualifications; that while it was still in force and effect he "canceled and terminated" it before performance "believing" that the plaintiff's machine would not do satisfactory work; and that prior to the date plaintiff was to have threshed the grain the former notified the latter that he would not permit him to thresh the grain. It is also to be observed from the record that the plaintiff's evidence clearly established the value of the tolls for the threshing of defendant's grain for the season covered by the contract at the contract price agreed upon between plaintiff and the defendant to be $194, and that the plaintiff's net profit, after deducting the expenses of doing the threshing, would have amounted to $122.

It is contended by the defendant that the contract in question was purely an executory contract subject to termination at any time by either party, and because of the defendant having notified the plaintiff of its termination before the time fixed by its terms for performance the plaintiff was precluded from recovering in his suit for damages. With this contention we cannot agree. We think the plaintiff's proof, coupled with the expressed admissions of the defendant's answer in the case, absolutely preclude a judgment of nonsuit. The plaintiff here sued to recover damages for breach of an executory contract. The theory on which the case was tried, and what was clearly established by the plaintiff's evidence, when defendant interposed a motion for nonsuit, was that the plaintiff had sustained a net loss of $122,

after deducting all legitimate expenses, by reason of the defendant's refusing to permit the plaintiff to perform the contract. The rule of law applicable in such cases, as laid down by all the text-writers and clearly established by the adjudicated cases, may be best stated in the language of 1 Suth. Dam. 66, cited in plaintiff's brief, as follows:

"Where a party has contracted to perform labor from which a profit is to spring as a direct result of the work done at the contract price and is prevented from earning this profit by the wrongful act of another party, its loss is a direct and natural result which the law will presume to follow the breach of the contract; and he is entitled to recover it without special allegations in his declaration; the amount of damage may be established by showing how much less than the contract price it will cost to do the work or to perform the contract."

The authorities cited by defendant in his brief *(Davis & Rankin* v. *Bronson,* 2 N. D. 300, 50 N. W. 836, 16 L. R. A. 655, 33 Am. St. Rep. 783; *Danforth* v. *Walker,* 37 Vt. 239; *Moline Scale Co.* v. *Beed,* 52 Iowa, 307, 3 N. W. 96, 35 Am. Rep. 272; and *Thomas* v. *Clayton Piano Co.,* 47 Utah, 91, 151 Pac. 543) are not in point. These cases simply hold that under an executory contract one party has the power to stop performance by subjecting himself to the payment of such damages as will compensate the other party for being stopped in the performance on his part, the same theory under which the plaintiff was seeking to recover from the defendant in the case at bar when defendant's motion for nonsuit was interposed. In the Utah case above mentioned the cases cited by defendant herein were referred to. In that case the plaintiff sought to recover from the defendant the full stipulated contract price after notice of repudiation, and this court, speaking through Mr. Justice Frick, said:

"But where, as here, it is made to appear that the contract was renounced before the time for performance had arrived, the plaintiff cannot sue upon the theory that he had fully performed, and is therefore entitled to recover the amount stipulated in the contract. Ordinarily, under such circumstances, the plaintiff can only recover the damages he suffered by reason of the renunciation of the contract up to time of notice of renunciation. * * * It is true that the damages may equal the amount stipulated in the contract under certain circumstances."

Again in a late case, *Holland-Cook Mfg. Co.* v. *Con. W. & M. Co.,* 49 Utah 43, 161 Pac. 922, this doctrine is fully sus-

tained by this court. In that case suit was brought for the recovery of damages for breach of contract by reason of the defendant refusing to receive three carloads of silos which it had ordered from plaintiff, the defendant having breached the contract by renouncing the same before performance. The opinion in that case says:

"Where, as here, the article contracted for is not in esse, but is to be manufactured, and the purchaser refuses to comply with his contract, the seller is not bound to manufacture the article and tender it to the purchaser, but he may sue the purchaser for damages for breach of contract, and the measure of damages and of his recovery is the difference, if any, between the cost of manufacturing the article or property purchased and the price agreed to be paid therefor by the purchaser; in other words, the profits that the seller would have derived from the contract in case the purchaser had fully performed the same is the measure of damages."

We are therefore of the opinion that the contention of the plaintiff that the trial court committed error in entering a judgment of dismissal of plaintiff's case on motion of defendant for nonsuit is fully sustained under the authorities and the record here, and that the case should be remanded to the district court of Tooele county, with directions to grant a new trial.

It is so ordered; appellant to recover costs.

FRICK, C. J., and McCARTY, J., concur.