Appeal from First District

## STEWART v. HANSEN.

No. 3858.   Decided June 11, 1923.   Rehearing Denied October 1,
1923.   (218 Pac. 959.)

1. SALES—UNIFORM SALES ACT UNIFORMLY CONSTRUED. The Uni-
form Sales Act will be construed in accordance with the con-
struction placed thereon by the court of last resort of any
state in which the act is in force, in view of Comp. Laws 1917,
§ 5183, providing that the act shall be so interpreted as to
effectuate its general purpose to make uniform the laws of
those states which enact it.

2. SALES—SELLER OF AUTOMOBILE COULD RECOVER FOR LOSS OF
PROFITS ON BUYER'S REFUSAL TO ACCEPT IT. An automobile
dealer, on buyer's refusal to accept automobile, could recover
as damages the profits he would otherwise have realized, and
was not limited to the difference between the contract price
and the market price, under Comp. Laws 1917, § 5173, making
the difference between contract price and the market price
the measure of damages "in the absence of special circum-
stances showing proximate damage of a greater amount."[1]

GIDEON, J., dissenting.

Appeal from District Court, First District, Box Elder
County; *A. A. Law,* Judge.

Action by J. A. Stewart against L. A. Hansen.   Judgment
for plaintiff, and defendant appeals.

AFFIRMED.

*John A. Sneddon,* of Ogden, for appellant.

*Young & Davis,* of Brigham City, for respondent.

FRICK, J.

The plaintiff brought this action to recover damages for

---

[1] *Holland-Cook Mfg. Co.* v. *Con. Wagon & M. Co.,* 49 Utah, 43,
161 Pac. 922; *Tanner* v. *Johnson,* 50 Utah, 23, 165 Pac. 466.

the breach of a contract of sale of an automobile. The contract is in writing, and, in view that the only material question that is involved is the measure of damages that should be applied, it is not necessary to refer to either the pleadings or the findings of the court except to state that the court found that there was a binding contract entered into by the parties in which the plaintiff agreed to sell and the defendant agreed to buy an automobile at a stipulated price; that the delivery of the automobile was tendered by plaintiff and acceptance thereof refused by the defendant, and (stating it in the words of the finding), "that plaintiff has performed each and every covenant and condition on his part to be kept and performed," while the defendant has failed to comply with the terms of the contract, by reason of which the plaintiff suffered damages in the sum of $200. A conclusion of law was made to that effect and judgment was accordingly entered for the plaintiff for $200, from which defendant appeals and assigns a number of errors.

The only error that requires consideration, however, is the assignment that the district court erred in awarding to the plaintiff the profits he would have realized on the sale of the automobile if the defendant had consummated the transaction, and had not breached his contract.

The evidence, without conflict, is to the effect that the plaintiff was a dealer in or "salesman" of automobiles in Ogden; that he "purchased cars from the Oldsmobile Company at a certain price and then sold them to the purchasers at an advanced price," and that the automobile in question was an Olds automobile. The plaintiff also testified that in selling automobiles it was necessary to become established in business and to "establish a reputation as a car dealer and to advertise the business"; that he employed salesmen in his business to sell cars; that he was required to "furnish cars and gasoline and pay the men salaries to go out and hunt up prospects. If a prospect calls at the office, the name is retained by the man on the floor. In this case I had a man on the floor, Mr. Crosby, on a salary, and any prospect that called there he retained his name and address, and they

were given to the salesmen and the salesmen were sent to call,
and the car would have to be demonstrated. We very seldom
sell cars without a demonstration. Among automobile dealers
that is the practice we follow, and I followed that practice
in the Hansen case. I had a man go out and demonstrate
this car to Mr. Hansen.'' The plaintiff further testified that
in case the buyer refuses to receive the car the same efforts
to sell to another and the same demonstrations have to be
made to a new prospective purchaser. He also testified that
the invoice price of the car in question to him was $1,150;
that it might have been a little less, but in order to be on
the "safe side" he placed it at $1,150; that that was the
price the dealers paid for the cars like the one in question,
while the selling price to the buyers or the public was $1,395,
which was the price the defendant agreed to pay for the
car in question. The evidence further shows (which, how-
ever, may not be very material to the principle involved,
and it is stated here merely because it is a fact in this case)
that after plaintiff had kept the car in question for ''three
or four months'' after the defendant's purchase he returned
it to the company from whom he had purchased it receiving
credit therefor for the exact amount he had paid or agreed
to pay for it.

All of the foregoing evidence was objected to by defend-
ant's counsel, and was received over his objections. The
objections, however, all go to the measure of damages, and
are all covered by the defendant's assignment to which we
have referred.

What, then, is the proper measure of damages, in case the
purchaser of an automobile refuses to consummate his con-
tract of purchase where the purchase is made from a dealer
in automobiles under the circumstances outlined in the case
at bar?

Our statute, Comp. Laws Utah 1917, § 5173, which is a
copy of the damage section of the Uniform Sales Act, so far
as material here, reads as follows:

"1. Where the buyer wrongfully neglects or refuses to accept
and pay for the goods, the seller may maintain an action against
him for damages for non-acceptance.

"2. The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"3. Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

Section 5183 reads as follows:

"The title shall be so interpreted and construed as to effectuate its general purpose to make uniform the laws of those states which enact it."

If, therefore, the section of the Uniform Sales Act here in question has been construed by the court of last resort of any state in which the Uniform Sales Act is in force, then I conceive it to be the duty of this court to follow such construction in order to comply with the spirit and purpose of section 5183, supra, and to maintain the uniformity of the provisions of the Uniform Sales Act. It would be utterly futile for the Legislatures of the several states to adopt uniform laws upon any subject if each court of the several states followed the notion of its members with regard to how a particular provision should be construed and applied.

The only case, so far as the writer has been able to ascertain, in which the precise question here involved has been passed on and decided is the case of *Torkomian* v. *Russell*, 90 Conn. 481, 97 Atl. 760, decided in April, 1916, by the Supreme Court of Connecticut. The Uniform Sales Act was approved in this state in March, 1917, or nearly a year after the Connecticut Supreme Court had construed the section here in question. Quite apart, therefore, from the duty imposed on this court in section 5183, supra, the construction given the act by the Supreme Court of Connecticut should be followed upon the presumption that our Legislature adopted the act with the construction given it by that court. In view that this case is one of the first impression in this

court, I shall take the liberty of quoting freely from the decision in the Torkomian Case.

In passing upon the measure of damages, the Supreme Court of Connecticut in that case, at page 485 of 90 Conn., at page 761 of 97 Atl., said:

"The defendants, if entitled to recover under their counter-claim, were entitled to recover under our common law such sum as would put them, so far as it can be done by money, in the same position they would have been in if the contract had been per-formed. In the absence of special circumstances requiring a dif-ferent rule, the damages recoverable by a vendor for refusal to take goods contracted for is the difference, at the time and place of delivery, between the contract price and the market price. *Jordan, Marsh & Co.* v. *Patterson*, 67 Conn. 473, 480, 35 Atl. 521. But we recognize that this rule is not an unbending one, that the circumstances may require its modification in order to effectu-ate the cardinal purpose, 'just compensation for the loss incurred'; and the loss must be such as 'may reasonably be supposed to have been in the contemplation of the parties at the time they made the contract.' *Jordan Marsh & Co.* v. *Patterson*, supra. Section 64 of the Sales Act (Public Acts of 1907, c. 212, p. 782) reaffirms our rule for measuring damages in case of breach of a contract of sale by the vendee.

"The market price to these defendants of a Lozier Six was un-doubtedly less than its selling price, since they were selling agents who purchased and took title to the cars they disposed of. Section 64 provides as a measure of damage the difference between the contract price and the market price 'in the absence of special circumstances showing proximate damage of a greater amount.' The circumstance that these defendants were selling agents, and purchased cars at a rate lower than the market price of the cars to the public, made the ordinary measure of damages inadequate. The defendants lost, by the plaintiff's breach, the difference be-tween the contract price and what the car, ready for physical de-livery to the plaintiff, would have cost them, which would have been the purchase price of the car plus the expense, if any, of delivery and of making it ready for delivery. This is the appli-cation of section 64 to the facts of this case. It requires the person who has failed to keep his contract of sale to pay the loss caused to the contractor who has kept his contract. *Lee* v. *Harris*, 85 Conn. 212, 214, 82 Atl. 186.

"The defendants, as vendors or contractors, were entitled to show what a Lozier Six car would have cost them, in the same way a manufacturer might show the cost of an article manu-factured by him. The defendants would thus recover the profits

they would have made had the plaintiff carried out his contract. In such a case profits are not speculative, but certain and ascertainable and the legitimate fruits of the contract. *Roehm* v. *Horst*, 178 U. S. 1, 21, 20 Sup. Ct. 780; *Dimmick* v. *Hendley*, 117 Md. 458, 84 Atl. 171; *Poppenberg* v. *Owen & Co.*, 84 Misc. Rep. 126, 146 N. Y. Supp. 478."

The undisputed facts of this case, in my judgment, bring it clearly within the provisions of subdivision 2 of section 5173, supra, and also within the provisions of subdivision 3 of that section, which permit damages beyond those stated in the general rule there stated in the event of "special circumstances, showing proximate damage of a greater amount" than the "difference between the contract price and the market or current price," etc. If we keep in mind the fact that if in cases like the one at bar the general rule of damages for breaches of contracts of sale by the purchaser is adopted, then the dealer of necessity must in every case be the loser by reason of the fact that he loses all compensation for his time and efforts in attempting to effect a sale, or in effecting it, of a car and in demonstrating it to the prospective purchaser and receives nothing for rent, advertising and other "overhead" expenses. Upon the other hand, the rule adopted by the Connecticut Supreme Court takes all of those matters into consideration, and its fairness and justice in that regard are commendable and wholesome in that it affords just and fair compensation to the seller without inflicting the slightest injustice upon the purchaser and is an inducement to all men to meet the obligations assumed by them in their contracts. Moreover, the rule adopted gives the seller the fruits of his bargain, which is a matter that should always be considered in applying the measure of damages in any case.

The evidence in this case shows that both the dealer's price and the selling price to the public were the same at the time of the purchase that they were at the time the contract was entered into. In the nature of things such must nearly always be the case in transactions like the one in question here, for the reason that the sale and the breach, where one occurs, are seldom far apart in time,

As I understand the law upon the question of the measure of damages, however, the rule adopted by the district court in this case is the correct one and is sustained by abundant authority quite apart from the provisions of the Uniform Sales Act. In the case of *Howard* v. *Stillwell, etc., Co.*, 139 U. S. 199, 206, 11 Sup. Ct. 500, 503 (35 L. Ed. 147), Mr. Justice Lamar in stating the general rule in cases of breaches of sales contracts, and, after stating the reasons for that rule, says:

"But it is equally well settled that the profits which would have been realized had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into. *United States* v. *Behan*, 110 U. S. 338, 345, 346, 347; *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444, 454, 456; *Philadelphia, Wilmington & Baltimore Railroad Co.* v. *Howard*, 13 How. 307."

The same question in another form was considered in the case of *Masterton* v. *Mayor of Brooklyn*, 7 Hill (N. Y.) 61, 69, 42 Am. Dec. 38, 42, where, after discussing the question of profits and when and why profits as a general rule are too remote and speculative to constitute a true measure of damages, it is said:

"But profits or advantages which are the direct and immediate fruits of the contract entered into between the parties, stand upon a different footing. These are part and parcel of the contract itself, entering into and constituting a portion of its very elements; something stipulated for, the right to the enjoyment of which is just as clear and plain as to the fulfillment of any other stipulation. They are presumed to have been taken into consideration and deliberated upon before the contract was made, and formed perhaps the only inducement to the arrangement."

In 17 C. J. p. 788, § 113, in referring to the question of profits as the measure of damages, it is said:

"As a general rule a party not in default is, in case of a breach of contract due to the fault or omission of the other party, entitled to recover profits which would have resulted to him from performance. But in order that it may be a recoverable element of

damages the loss of profits must be the natural and proximate result of the breach complained of and they must be capable of ascertainment with reasonable certainty."

In 2 Sutherland on Damages (4th Ed.) § 647, after an exhaustive discussion respecting ''liability for not accepting goods,'' and after stating the general rule that is ordinarily applied, the author says:

"The law of damages is not comprised in a set of arbitrary rules. Where a contract has been broken, or a wrong has been committed, compensation must be made. This is the underlying principle, and any standard or measure which does not accord with it cannot be applied, but some other, which is fairly compensatory to the one party, and not unjust to the other, must be resorted to."

The text is fully sustained by the cases that are cited in its support.

Many similar quotations from the authorities might be given, but the foregoing are quite sufficient to show the trend of the decisions. I have quoted the foregoing excerpts from the opinions merely to show that the statements of the law as quoted are clearly and indisputably applicable to the undisputed facts of the case at bar and to make clear that the general rule cannot, in justice and fairness, be applied to this case.

In addition to what has been said, however, there is, to my mind, another very potent reason why the rule stated in the foregoing quotations should be applied to the case at bar. If the plaintiff in this case had stored the car for the benefit of the defendant, and had brought this action to recover the purchase price which the defendant had agreed to pay therefor, plaintiff's profits would have been included in that price and no court would, nor under the facts and circumstances could, legally have denied him judgment for the full amount of the purchase price. That fact clearly demonstrates that in this case plaintiff's profits are necessarily included in the contract and hence do not fall within the category of what are termed remote or speculative profits as is very often the case, but they are necessarily contained within the contract, and must be considered and allowed if the contract is to be enforced in accordance with its terms.

Indeed, the contract cannot be enforced without allowing the plaintiff the contract price, and in doing that his profits would necessarily be included.

To further demonstrate that the loss of profits in this case is the natural and proximate result of its breach it is only necessary to say that in a case like the one at bar the amount of damage is ascertained in precisely the same way as they would be ascertained under the general rule, namely, by a mere process of subtraction. When the difference between the contract price and the market price is allowed, we merely subtract the lesser from the greater, and the difference, if there be any, fixes the amount of damages to be allowed. That is precisely what happens in a case like the one at bar. When that rule is applied, in case the seller refuses to consummate the contract, the purchaser obtains the full benefit of his bargain by being allowed the advanced price he was required to pay for a like article in the market, if there was any advance in price. If he has contracted for a price less than the current market price, he would again be given the benefit of his bargain by receiving the difference. If, therefore, the buyer obtains the benefit of his bargain in case the seller fails to consummate the sale, why should not the seller likewise receive the fruits of his bargain if the buyer refuses to perform the terms of his contract. This the seller cannot do in cases like the one at bar, unless he is allowed the profits that he would have received if the sale had been consummated. The general rule relied on by the defendant, therefore, has no application to this case.

The following cases are, however, specially relied on as sustaining defendant's contention: *Wood & Selick* v. *American Grocery Co.*, 96 N. J. Law 218, 114 Atl. 756; *Allen* v. *Wolf River Lbr. Co.*, 169 Wis. 253, 172 N. W. 158, 9 A. L. R. 271; *McLaren* v. *Marmon-Oldsmobile Co.*, 95 N. J. Law, 520, 113 Atl. 236; *Gloekler* v. *Painter*, 272 Pa. 131, 116 Atl. 110; *Standard Casing Co.* v. *California Casing Co.*, 233 N. Y. 413, 135 N. E. 834.

In the case first cited the purchaser refused to receive a large amount of raisins which he had purchased. The vendor then resold them, and obtained less than the contract

price at such sale. He sued to recover the difference between the contract price and the amount realized at such sale. The court awarded him the difference sued for. In the course of the opinion the general rule respecting the measure of damages for purchase and sale contracts is stated and discussed, but the question here involved is not discussed, much less decided. Indeed, it could not have been decided, because it was not involved. The other cases cited are all cases where the seller refused to deliver the articles which he had agreed to sell and deliver and the action was commenced by the purchaser to recover damages for the seller's breach. In those cases the general rule respecting the measure of damages in sales contracts is again stated and discussed, and the provisions of the Uniform Sales Act are also referred to. It must be apparent, however, to any lawyer that the question involved in the case at bar could not have been decided.

In addition to the foregoing cases defendant's counsel also cites and relies on the following: *Progressive Smelting & Metal Corp.* v. *Ansonia Foundry Co.*, 93 Conn. 123, 105 Atl. 322. That is a Connecticut case which was decided after the case of *Torkomian* v. *Russell,* supra, was decided, and in no way affects the decision in the latter case. Besides, the action is again one by the purchaser against the seller.

The defendant also cites and relies upon *Phillips Sheer & Tinplate Co.* v. *W. W. Boyer & Co.*, 133 Md. 119, 105 Atl. 166; *Packard Iron & Metal Co.* v. *H. P. Pearl Co.*, 139 Md. 498, 115 Atl. 761; *Iron Trade Products Co.* v. *Wilkoff Co.*, 272 Pa. 172, 116 Atl. 150; *Hess Bros., Inc.,* v. *Great Northern Pail Co.*, 175 Wis. 465, 185 N. W. 542. In all of the cases last cited the purchasers brought the actions against the sellers for the refusal to comply with the contracts of sale, and in all of them the general rule in such cases is stated and applied. In none of them, however, is the question here involved discussed. The other cases cited by defendant's counsel have no application here, and hence need not be considered.

The principle that I have attempted to invoke as applicable to the case at bar is also in harmony with the rule adopted by this court in *Holland-Cook Mfg. Co.* v. *Con. Wagon & M.*

*Co.*, 49 Utah, 43, 161 Pac. 922, and *Tanner* v. *Johnson,* 50 Utah, 23, 165 Pac. 466. 'It is true that in those cases the profits that were in question and were allowed were those that the seller would have realized if he had been permitted to complete the manufacture of the articles contracted for or to carry into effect the terms of the contract. The principle is, however, substantially the same in the case at bar for the reason that, as was the case in the two cases last referred to, the seller is merely allowed to reap the fruits of his contract. That is precisely what will result in this case in case the judgment is affirmed.

In my judgment there is no escape from the conclusion that while the district court did not allow the plaintiff the full amount to which he was entitled, but of which plaintiff' does not complain, yet the court adopted the correct measure of. damages, and therefore the judgment, should be affirmed, with costs to respondent.

WEBER, C. J., and THURMAN and CHERRY, JJ., concur.

GIDEON, J. (dissenting). The court's order affirming the judgment is based upon the theory that there are "special circumstances" shown by this record that take the case out of the ordinary action for breach of contract for the sale of personal property. Counsel for respondent (plaintiff below) made no such contention. Both in the oral argument and printed brief counsel based his argument upon the theory that subdivision 2, § 5173, of our Code, quoted in the opinion, establishes a new or different measure of damage than that heretofore generally recognized by the courts. That the Sales Act does not establish a new or different rule of law respecting the measure of damage is, as I understand the court's opinion, now conceded. With that conclusion I agree. The facts in this case do not authorize the contention that there were "special circumstances" surrounding this sale. The respondent was an automobile dealer and engaged in that business in Ogden, Utah. He had the car in question on hand at the date of the sale—if not at the sales room, at

the warehouse in that city. The testimony is without dispute that the market value of the car contracted to be purchased was the same at the date of the contract and at the date appellant refused to accept the car, and that the price remained the same to the date of trial. There is nothing in the record to indicate that the respondent purchased the car to enable him to comply with his contract with appellant. Neither is there anything to indicate that the respondent lost a sale to any other purchaser by reason of the contract of sale in question. There is some testimony tending to show that a dealer in automobiles is required to, and that this plaintiff did, employ salesmen, and also had in his employ a demonstrator; that is, a person to instruct prospective purchasers as to the method of operating automobiles. It is therefore concluded that because of these facts the sale of an automobile surrounds the transaction with "special circumstances." If that be true, a dealer in merchandise, and especially farm machinery, is surrounded by facts and circumstances constituting special circumstances. Any merchant, of necessity, employs salesmen whose duty it is to explain to prospective purchasers the quality of the article to be sold. The sale of an automobile should not be clothed with more sanctity than a sale of other property.

The language found in the opinions of courts should and must be considered in connection with the particular facts of the case under consideration. The facts in the cases quoted in the opinion of the court, with the exception of the Connecticut case, are in no way analogous to the facts in the instant case.

*Masterton* v. *Mayor of Brooklyn,* supra, was an action to recover damages for a breach of contract for the delivery of a specified amount of marble. Marble was to be taken from a certain quarry designated in the contract. The buyer failed and refused to keep the provisions of the contract, and the court rightfully determined that the profits the proof showed the plaintiff would have realized, had the contract been completed, should be' considered as the basis of the measure of damages.

*Howard* v. *Stillwell & B. Mfg. Co., supra,* was founded

upon a written contract for the reconstruction by the plaintiff company of a flour mill. The contract provided that the manufacturing company should reconstruct the mill of the defendant by placing therein certain specified machinery. In a suit upon a breach of the contract the court used the language found in the opinion.

In these cases no other or different measure of damages could have been applied.

In the instant case the automobile was in existence; it was a stock model; it had a market value, and that value was the same at the date of the contract as at the date of the breach.

It is stated in the opinion that, had the respondent stored the automobile and sued for the contract price, appellant would have had no defense to the action.

This court, in *McCall Co.* v. *Jennings,* 26 Utah, 459, 73 Pac. 639, approved as a correct statement of the law the instruction of the court found on page 465 of 26 Utah, on page 641 of 73 Pac. of the report, as follows:

"In an action for breach of an executory contract (that is, a contract where there has been no delivery, or title has not passed) to purchase personal property, in the absence of fraud or stipulation to the contrary, the rule of damages is actual compensation; the injured party may recover his loss sustained. In such case the damage is the difference between the contract price and the market price at the time and place of delivery."

That suit was brought upon the theory that the plaintiff was entitled to recover the contract price for the goods agreed to be purchased by the defendant, but this court was of the opinion, and so held, that as the defendant had terminated the contract before the goods in question were delivered the only right of recovery was the difference between the contract price and the market price.

In *Love* v. *St. Joe Stockyards,* 51 Utah, 305, 169 Pac. 951, the rule of law stated in the McCall Case is again announced. On page 311 of 51 Utah, on page 953 of 169 Pac. of the report the court says:

"The evidence is abundant to support the finding, and hence it is conclusive upon us. In view of that finding, therefore, if it were conceded that the respondent were liable as an undisclosed

principal, yet, under the most elementary rule of damages, appellants could not have been damaged by the failure of the respondents to receive the 448 head of horses. Appellants, in any event, could only have received the difference, if any, between the contract price and the market value of the horses at the time respondent should have received them under the contract if the market value were less than the contract price."

In that case the parties had entered into a written agreement for the sale and purchase of a designated number of horses at an agreed price. The horses were purchased for the purpose of fulfilling the agreement made between the parties. The district court made findings that the market value at the date of the breach was greater than the contract price, and that therefore the plaintiff was not entitled to recover. As indicated, this court affirmed that holding of the district court. I can see no difference, in principle, in the facts of that case and the case in hand.

The basic theory of the measure of damages for failure to comply with the terms of any contract is compensation. The rule is stated in 24 R. C. L. at page 116, as follows:

"As a general rule the measure of damages recoverable by the seller for the buyer's breach of the contract is the difference between the price agreed to be paid and the market value of the property. The principle on which this rule rests is that of an indemnification of the injured party for the injury which he has sustained, and, in ordinary cases, the value in the market on the day forms the readiest and most direct method of ascertaining the measure of the indemnity."

This court, as has been pointed out, has been committed to that doctrine in the absence of special circumstances necessitating a different rule.

I regard the decision in *Torkomian* v. *Russell,* supra, quoted from in the opinion of the court, as in conflict with the decisions of this court, and, if there are no additional facts except those appearing in that decision, as contrary to the great weight of authority. The rule that I contend for is recognized by the Connecticut court in a later decision, *Sabas* v. *Gregory,* 91 Conn. 26, 98 Atl. 293.

In this case the testimony is indisputable that the plaintiff had suffered no damage. He had the property in his possession at the time of the contract of sale and he had it at

the date of the breach.  Its market value was the same at both dates.  To allow him profits is to give him the benefits of the sale and retain the goods.  It has never been recognized in this state that the mere fact of loss of sale entitles the dealer to damages.

It is suggested in the opinion that the principle applied in this case is in harmony with the rule adopted by this court in *Holland-Cook Mfg. Co.* v. *Con. W. & M. Co.,* 49 Utah, 43, 161 Pac. 922, and *Tanner* v. *Johnson,* 50 Utah, 23, 165 Pac. 466.  An examination of those cases will readily disclose that the facts there are entirely different from the facts here.  That difference is clearly recognized by the court on page 50 of the case in 49 Utah, on page 924 of 161 Pac., as follows:

"Where, as here, the article contracted for is not in esse, but is to be manufactured, and the purchaser refuses to comply with his contract, the seller is not bound to manufacture the article and tender it to the purchaser, but he may sue the purchaser for damages for breach of contract, and the measure of damages and of his recovery is the difference, if any, between the cost of manufacturing the article or property purchased and the price agreed to be paid therefor by the purchaser."

The Tanner Case was an action for the breach of an oral executory agreement under which plaintiff was to thresh defendant's grain.  It was held in that case, upon a renunciation of the contract, that the measure of damages was the net profits the thresher would have realized had he been permitted to do the threshing.  The principles of law controlling in such cases has no application here.

In 2 Sutherland on Damages (4th Ed.) § 647, it is said:

"On the breach of a contract to accept goods the vendor has, in some states, the choice of three remedies:  He may store the goods for the buyer and sue for the price; he may sell them as agent for the vendee and recover any deficiency between the price realized and that contracted to be paid, or keep the goods and recover the difference between the contract price and the market price at the time and place fixed upon for delivery.  These remedies are not concurrent."

In this state, as pointed out in the McCall Case the remedy is for a breach of the contract.  It is of no concern that respondent may have had a choice of different remedies.  He

elected to sue for a breach of the contract. His rights must be determined under the rules of law applicable to the cause of action stated in his pleadings. The measure of damages announced by the former decisions of this court is the difference between the contract price and the market price at the date of the breach. Any other rule under facts such as we have here must of necessity work an injustice, as it does in this case. The departure from the former decisions of this court, it seems to me, is regrettable.

I therefore dissent.