A. LENOBEL, INC., Appellant, *v.* CHARLES G. SENIF, Respondent.

Second Department, November 29, 1937.

*Robert Jablin,* for the appellant.

*E. Joseph Picarello,* for the respondent.

CARSWELL, J. Plaintiff is the official Plymouth car dealer for Long Island City. On May 27, 1936, the defendant Senif, under a written contract, bought from plaintiff a Plymouth car for $781.50, making a $50 down payment. The buyer, Senif, on June 1, 1936, in writing, assumed to cancel the contract, but the dealer refused to concede his right so to do. The dealer then resold the same car for $781.50. It then brought this action against the buyer for claimed loss of gross profits of $226.50, as damages arising from the breach by the buyer of the contract of sale. The buyer counterclaimed for the return of the deposit.

The trial court dismissed the complaint and granted the defendant buyer judgment on the counterclaim. The judgment on the counterclaim was reversed by the Appellate Term and a new trial ordered. The dismissal of the complaint, however, was affirmed, on the ground that no damages were shown.

The trial court excluded evidence of overhead of the dealer. The proffered evidence thus excluded related to the employment of salesmen, advertising expenses, the furnishing of cars and gasoline, and the payment of men to seek and interview prospective buyers and to demonstrate cars. It was proffered on the theory that these items of overhead were " special circumstances " entitling plaintiff to a recovery of the amount of gross profits. These rulings have been held to be correct.

An appeal has been allowed to review but one question — the proper measure of damages applicable herein.

The vendor appellant claims that the proof excluded was relevant under subdivision 3 of section 145 of the Personal Property Law. That section is headed " Action for damages for nonacceptance of the goods." It concerns actions by vendors against vendees. Subdivisions 2 and 3 of section 145 read:

" 2. The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

" 3. Where there is an available market for the goods in question, the measure of damage is, *in the absence of special circumstances, showing proximate damage of a greater amount*, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept."

The foregoing subdivision 3 has a counterpart in subdivision 3 of section 148 of the Personal Property Law, which relates to converse situations — actions by vendees against vendors.

The provision in respect of "special circumstances" was considered in a case that involved section 148, in an action by a vendee against a vendor. (*Czarnikow-Rionda Co.* v. *Federal S. R. Co.*, 255 N. Y. 33.) There the defendant contracted to sell to the plaintiff in stated installments an amount of sugar. The defendant vendor breached its contract. It was held that special loss or damage, growing out of resale contracts made by the vendee, as a "special circumstance," could be visited upon the vendor only if it "'knew that other goods of the kind contracted for could not be obtained by the buyer'" for delivery on the resale. Otherwise, only general damages could be had.

In the case at bar there is no proffered proof that the vendee had any knowledge of the elements of the vendor's overhead. It may not be said, therefore, that the defendant vendee contracted with the plaintiff vendor in contemplation of such matters as "special circumstances" upon which might be predicated a claim for damages of an amount greater than obtains on the breach of an ordinary contract of purchase and sale of a commodity; *i. e.*, the difference between the contract price and the market value at the time and place of delivery. (*Czarnikow-Rionda Co.* v. *Federal S. R. Co.*, *supra*; *Windmuller* v. *Pope*, 107 N. Y. 674; *Belle of Bourbon Co.* v. *Leffler*, 87 App. Div. 302.)

The "special circumstances" invoked by the dealer seem to be that (a) it may sell in a limited area only; (b) its sales price is fixed by its manufacturer and this becomes the retail market value; and (c) it has certain overhead that must be met out of gross profits from its sales quota. As a consequence of all this, it says that this retail market value has an unnatural element, unlike the market value of an ordinary commodity. No matter how the market value is arrived at — it is the market value, whether it be fixed by a restriction of a manufacturer or the unrestricted actions of buyers and sellers in a free market. This is so whether the commodity sold be a ton of coal, a fur coat, or an automobile. The same elements of overhead are common to the sellers of innumerable commodities who are not affected by manufacturers' restrictions; hence, in the absence of special agreement, these elements cannot fairly be said to be "special circumstances," unless the vendors and vendees of practically every commodity are deemed to be similarly affected by "special circumstances," so as to entitle vendors to the amount of gross profits as damages for the breach of a contract of sale.

The plaintiff says such a view leaves it remediless; that on the resale to replace the defendant it depleted its number of prospects

to the extent of one, and, therefore, its overhead, as a consequence of defendant's breach of contract, receives no contribution from the gross profits on at least one sale. This contention is specious. If the buyer had in effect assigned his contract of purchase by taking a delivery and immediately selling to another in the same area, and had thus abandoned his purpose to get a new car for himself, a depletion of prospects to the same degree would have occurred and but one commission would have inured to the plaintiff. But plaintiff had other remedies. It could have exacted a larger down payment in cash or notes to protect itself against a breach of contract by the vendee. In place of the contrary provision as to title now set out in the contract, it could have provided in its contract that title was to pass to the buyer when the sale was made (Pers. Prop. Law, §§ 99, 100), and have the common-law rule (*Agar* v. *Orda*, 264 N. Y. 248) prevail by agreement. It could then have held the car and sued for the entire purchase price (Pers. Prop. Law, § 144) and thus have avoided depleting immediately the number of its prospects. It could have inserted in its contract a provision that its relations with its manufacturers and the effect thereof in reference to its overhead should be deemed " special circumstances " within subdivision 3 of section 145 of the Personal Property Law, entitling it, in the event of a breach by the vendee, to recover, as damages, the amount of gross profits on the sale. This would have brought home knowledge to the vendee and he would have been deemed to have contracted in contemplation of this element of damages beyond the general rule ordinarily applicable to the sale of a commodity. Adopting plaintiff's contention would result in an awkward and cumbersome inquiry into elements of overhead respecting which the buyer ordinarily has no knowledge and has no means of meeting or refuting the claims of the vendor, in whole or part.

This view in respect of a contract of sale of an automobile by a dealer and the consequence of a breach thereof by a buyer is not novel. (*Chalmers Motor Co.* v. *Maibaum*, 186 Ill. App. 147 [1914]; *Schuenemann* v. *Wollaeger Co.*, 170 Wis. 616; 176 N. W. 59 [1920]; *Lowas Garage Co.* v. *Scheer*, 199 N. Y. Supp. 748 [1923].) Here the sale was one of goods *in esse;* it was not a contract for the sale of an article to be manufactured, for breach of which loss of profits may be had. (*Belle of Bourbon Co.* v. *Leffler, supra.*) The article had market value and was not subject to the rule applicable where there is no market value or where the commodity is of a perishable nature. (*Todd* v. *Gamble*, 148 N. Y. 382; *Kelso* v. *Marshall*, 24 App. Div. 128.)

It is urged that the measure of damages in any event, in a situation such as this, should be the difference between the contract price to the vendee and the dealer's market price or value; that is, the cost to the dealer. This would be contrary to long-settled doctrine. The market value against which a contract price is to be considered is the fairly comparable market value. If the contract price is fixed in a retail sale, the fairly comparable market value is the retail market value. Likewise, if the contract price is fixed on a wholesale or trade sale, the fairly comparable market value is the trade or wholesale market value.

The chief reliance of the plaintiff is *Stewart* v. *Hansen* (62 Utah, 281; 218 P. 959), where recovery for loss of profits was permitted. That case in turn is based on *Torkomian* v. *Russell* (90 Conn. 481; 97 A. 760). The authority of the latter is weakened by *Sabas* v. *Gregory* (91 Conn. 26; 98 A. 293). The reasoning of these cases does not commend itself. It imports into the contracts of the parties something that is not there and incorrectly assumes that if this be not done the vendor is without remedy.

These views leave untouched the opportunity to a vendor to proffer proof that he was put to a special or added expense on a particular resale which would possibly constitute a " special circumstance " that would be a further element of damage, but this item would not be evidenced by mere proof of the amount of gross profits on the original sale, or mere proof of general elements of overhead.

The order of the Appellate Term should be affirmed, with costs.

Present — HAGARTY, CARSWELL, JOHNSTON, TAYLOR and CLOSE, JJ.

Order of Appellate Term affirming a judgment of the Municipal Court of the City of New York, Borough of Queens, in so far as it dismisses the complaint, and reversing said judgment in so far as it permits recovery on defendant's counterclaim and directs a new trial as to the counterclaim, unanimously affirmed, with costs.