Argued January 24, affirmed April 18, 1951

# NELSON EQUIPMENT COMPANY *v.* HARNER
230 P. 2d 188

*William Huey,* of Eugene, and Nelson H. Grubbe, of Springfield, argued the cause for appellant. On the brief were Ramstead & Huey, of Eugene, and Nelson H. Grubbe.

*Sidney A. Milligan,* of Eugene, argued the cause for respondent. On the brief were Immel & Milligan, of Eugene.

Before Brand, Chief Justice, and Rossman, Lusk, Warner and Tooze, Justices.

BRAND, C. J.

This is an action to recover damages on account of alleged breach of contract for the purchase by the defendant from plaintiff of one Jaeger self-propelled asphalt paver. After trial of the issues the circuit court directed a verdict and thereafter rendered judgment in favor of the plaintiff for the amount prayed for in the complaint. The defendant appeals.

The complaint alleges the making of the contract, the readiness and ability of the plaintiff to perform, the attempted cancelation of the contract by the defendant and the damages suffered by the plaintiff as the result of the alleged breach. The answer, except as to formal matters, is a general denial. The plaintiff is in the business of selling industrial equipment and is a dealer handling products of the Jaeger Machine Company. The defendant is engaged in the building and repair of highways, having his principal place of business in Eugene, Oregon. On a printed form of the plaintiff company, the defendant executed an order, the material portions of which are as follows:

"Ship from Factory * * *
Name of salesman Alexander Order date 3 Nov 48
Please enter our order as follows
Bill to Acme Const. Co. 733 Olive St., Eugene, Ore * * *

1 Jaeger self-propelled Asphalt paver.

Delivery first part of April

Subject to Canc. not Later than 1 Jan 49.

\* \* \*

"It is understood that the contract embodies the entire agreement between the parties and that there are no verbal understandings or agreements other than as expressed herein, and that the order shall become binding upon the undersigned and this contract in full force and effect when the same has been accepted at the home office of the said Nelson Equipment Co.

"IN WITNESS WHEREOF, The purchaser has executed this agreement the 4th day of November, 1948".

The instrument was signed by Acme Construction Company, by N. H. Harner, and thereafter by Nelson Equipment Company by Mr. Scott Corbett, its secretary. The price was not stated in the order. The order was brought into the office of the plaintiff by the salesman who took it, and was signed by the secretary of the plaintiff company at its office. Mr. Corbett testified as follows:

"A. At the time the order was given to us by Mr. Harner neither ourselves nor the factory were certain as to the exact price they would have to put on the equipment and the agreement with Mr. Harner was the price F. O. B. the factory, Columbus, Ohio, would be the price plus the freight to Oregon.

"Q. Was that price thereafter determined? A. Yes, sir, it was.

"Q. Was Mr. Harner to your knowledge acting as the Acme Construction Company notified of the price? A. As soon as we learned what the price was we notified Mr. Harner."

The price was $11,500 f.o.b. the factory. In the negotiations no question was raised as to the price. Defendant testified:

"A. There was no price set. It was understood it would be the market price at the time of delivery, the shipment or delivery.

"* * *

"Q. And you knew the terms, the price of the machine would be determined as the factory price, didn't you? A. Yes, sir."

The plaintiff produced evidence that it was ready, able and willing to perform the contract by the time specified in the order. On 24 January 1949 the plaintiff wrote to the defendant, the material portions of the letter being as follows:

"We wish to thank you for the confirmation of your order that you placed through Mr. Mosel and us on the Jaeger BP-5 Bituminous Paver, and we just got this information which I am forwarding to you for your own files.

"* * *

"You will note that the price of this machine is $11,500.00 f.o.b. the factory, and the over-all weight of this machine is 18,000 pounds. Because of its length, it's probably going to take a single flat car to bring this out so I'm going to estimate the freight around $1100 or $1200. That, of course, is an estimate, and we would charge you the exact freight.

"We just wanted you to know we're going to make delivery of this machine in March; this is a confirmation of your order to us and we also wanted you to have this literature for your own files.

"* * *

"If you'll let me know in plenty of time where you're going to work this machine, we can have the carload brought right into that area and, thus, save some transportation freight here in Oregon."

The letter is signed ''Nelson Equipment Company, Scott S. Corbett, Jr. Sales Manager''. On 28 March 1949 the defendant wrote the plaintiff as follows:

''In regard to Jaeger asphalt layer, I wish to cancel my order for same as I have purchased a Barber Green machine from Columbia Equipment Co.''

Referring to the letter of cancelation the witness Corbett testified as follows:

''Q. Prior to the receipt of this letter had you received any indication from him that he might not want the machine? A. No, none whatsoever. And if I recall right I talked to him some time within a week from the time this letter was written, at which time I was going to California to see the machine and I told him about it and our conversation did not indicate any intention of cancelling.''

Upon receipt of the letter the plaintiff notified the defendant that they would not accept cancelation of the order and that they were prepared to complete delivery according to the original agreement. Mr. Corbett testified that no attempt at cancelation was ever made prior to the receipt of the letter of 28 March 1949 and that plaintiff would suffer the direct loss of commissions on the sale in the sum of $1921.50. He testified further:

''Q. Do you recall when you signed this? A. After it was turned into the office. It was brought in by the salesman that took the order.

''Q. And it was signed by you there? A. That's right.''

Concerning this matter we quote from the defendant's brief:

''This offer, although signed by the representative of the Nelson Equipment Company on Novem-

ber 4, 1948 (Tr 4) was not accepted by the Plaintiff until January 24, 1949 * * *''.

From the testimony last quoted it appears that the order was accepted by the plaintiff shortly after it was executed by the defendant, but it is not clear when the plaintiff first notified the defendant of the fact that the offer had been accepted. The defendant testified that he had discussions with Mr. Corbett and other salesmen from 4 November 1948 concerning the machine. Referring to the attempted cancelation, defendant testified:

"Q. Do you recall talking to Mr. Corbett by phone a few days before you wrote this letter? A. Yes, I do. He was going to have some more pictures to show me and I began to get skeptical about that time and I had an opportunity to buy another machine and I bought it.

"Q. You didn't say a word to them about it until you wrote this letter? A. No, * * *''.

There is no evidence that the defendant was unaware that the order had been accepted on 4 November 1948 as appears on the face of the instrument. On the contrary, it is apparent that by means of telephone conversations he became aware that the order had been accepted, although final confirmation concerning the factory price could not be given until 24 January when the plaintiff wrote the defendant as above set forth. In fact the defendant testified that he had "requested a little earlier delivery" of the machine than that specified in the order, thus indicating that he knew of the acceptance of the order and expected performance by the plaintiff.

The defendant makes a single assignment of error, namely, "in granting the Plaintiff's motion for a di-

rected verdict on the ground of errors at law.'' Defendant's first point is stated thus:

"By the terms of the Defendant's offer to buy it was limited as to time for acceptance and the acceptance was not made until after the offer expired by its own terms.''

Defendant cites authority to the effect that an offer terminates at the time specified therein, or if no time is specified, then at the end of a reasonable time; that an offer may be withdrawn at any time before it is accepted, and that an acceptance of an outstanding offer must be in the terms of the offer. We are further admonished to construe the terms of a contract so as to carry out the manifested intention of the parties. *Bagot v. Inter-Mountain Milling Co.,* 100 Or 127, 196 P 824; *Northwestern Agencies, Inc. v. Flynn,* 138 Or 101, 5 P 2d 530; *Courteen Seed Co. v. Abraham,* 129 Or 427, 275 P 684; 1 Restatement of Contracts, § 40, (1).

All of this is hornbook law. The problem here relates to the application, not the statement of the rules.

█ The order signed by the defendant on 3 November 1948 was an offer to a contract. By its terms the order was to become "binding   *   *   *   when the same has been accepted at the home office of the said Nelson Equipment Co.'' The instrument itself, the testimony and the statement in defendant's brief show that the offer was accepted by the Nelson Equipment Company on 4 November 1948. The verbal agreement between the plaintiff and the defendant to the effect that the selling price should be the factory price of the Jaeger Machine Company f.o.b. factory was made certain by the letter of confirmation of 24 January 1949. The defendant contends that the words "Subject to Canc. not Later than 1 Jan 49'' should be construed

as meaning "This offer expires on 1 January 1949". We can accept no such construction. It is apparent that the defendant contemplated that a binding contract should arise when the offer was accepted at the home office of the Nelson Equipment Company. The provision for cancelation was to enable the defendant to withdraw on or prior to, but "not Later than 1 Jan 49". After 1 January 1949, and before the attempted cancelation, the price, which depended upon the act of a third person, the Jaeger Machine Company, had been made certain and the defendant had been so advised. For more than two months after the written confirmation of the defendant's order, and while conversations were being had concerning the time of delivery and the like, the defendant gave no intimation of the position which he now assumes. In our opinion, the evidence conclusively establishes that the offer was mutually considered to be outstanding when it was both accepted and confirmed in writing by the plaintiff.

The defendant's second point in support of his contention that the court erred in granting plaintiff's motion for a directed verdict is to the effect that as a matter of law the defendant's offer was not accepted by the plaintiff within a reasonable time. The idea that defendant's offer had lapsed before acceptance appears to have been conceived post litem motam. In his brief the defendant says:

> "It is indicated by the testimony of the plaintiff's secretary that the original order blank was signed by an authorized representative of the Plaintiff on November 4, 1948 * * *."

The provision for cancelation not later than 1 January was appropriate for the particular transaction involved. The order had been accepted at the plaintiff's

home office on 4 November 1948 by the affixing of the signature of the plaintiff company by its secretary, subject only to the duty to inform the defendant. The cancelation provision meant that either party could withdraw on or before, but not after 1 January. The fact that no independent consideration was given for the defendant's offer is immaterial, since we hold that the offer was accepted before it expired. We need not decide what would have been the effect if after 1 January, but before 24 January, the defendant had given notice of cancelation, although there is certainly strong evidence of an accepted contract and an informal notification of acceptance prior to 1 January, the price being specified as the factory price of the Jaeger Machine Company f.o.b. Columbus, Ohio. The defendant's own conduct demonstrates that he considered that a contract had in fact been made, or, at least, that his offer was still outstanding on 24 January when the letter of confirmation fixing the price of the machine in dollars was sent. Why did the defendant on 28 March 1949 write to the plaintiff, "I wish to cancel my order * * *" if he then believed that there was neither an offer nor a contract to cancel? Furthermore, the parties had discussed the time of delivery shortly before 28 March, with no intimation that the offer had been withdrawn or the contract canceled. The bald fact is, that the defendant changed his mind and purchased a different machine without any previous notice to the plaintiff.

■ The defendant next contends that the acceptance on the part of the plaintiff did not comply with the requirements of the offer. He calls attention to the provision in the written order calling for "Delivery first part of April" and to the statement in plaintiff's letter

of 24 January, "we're going to make delivery of this machine in March". "To make delivery" meant no more than to tender delivery. We do not consider an expression of willingness to deliver goods a few days before the date specified to be indicative of a counter offer. In fact, the defendant testified that he had "requested a little earlier delivery". If he had not wanted the earlier delivery he could have refused to accept the machine until 1 April. The defendant's contention in this respect is without merit.

■ The next contention is that there was no meeting of minds as to price. It is provided by statute that:

"The price may be fixed by the contract, or may be left to be fixed in such manner as may be agreed, or it may be determined by the course of dealing between the parties." O.C.L.A., § 71-109.

In this case, the method by which the price in dollars was to be determined had been fixed by mutual agreement. It was the price fixed by a third party, the Jaeger Machine Company, f.o.b. its factory in Columbus, Ohio. *Ellingsworth v. Shannon,* 161 Or 106, 88 P 2d 293, cited by defendant is not in point.

■ The final contentions of the defendant relate to the measure of damages. It is argued that the measure of damages is the difference between the contract price and the market price at the time of the breach, rather than the profits to be earned by the plaintiff. The general principle underlying the rules concerning the measure of damages has been stated as follows:

"In an action for breach of contract the law attempts to place the party injured by the breach in the position which he would have been in if the other party had performed as nearly as that is possible by means of a judgment for money. * * *" *Smith v. Pallay et al,* 130 Or 282; 293, 279 P 279.

■ The plaintiff was not the manufacturer, nor was it dealing in a standard product which could be readily bought and sold on the open market at an established market price. The plaintiff was the agent of the manufacturer. The uncontradicted testimony shows that the amount of the loss to the plaintiff was $1921.50 which was determined by taking the discount allowed by the Jaeger Machine Company to the plaintiff as the selling agency. The asphalt paver was a specialized piece of equipment. The manufacturer was able to allot to the plaintiff only one machine. When the plaintiff received the defendant's order for that machine, it called in its salesmen and instructed them not to attempt to sell any more machines "because we wouldn't get any more." The result was, that when the defendant attempted to cancel his order, the season was so far advanced that it was too late to attempt to sell the allotted machine to anyone else. The manufacturer never shipped the machine after the defendant had breached his contract. The statute provides:

"(1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

"(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

"(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.

"* * *." O.C.L.A., § 71-164.

This statute has been construed in cases which are identical in principle to the one at bar, and it has been held in such cases that a dealer may recover the profit which would have been made in the transaction. In *Torkomian v. Russell et al.* 90 Conn 481, 97 A 760, it was held that:

"Under Sales Act (Pub. Acts 1907, c. 212) § 64, providing as a measure of damages the difference between the contract price and the market price 'in the absence of special circumstances showing proximate damages of a greater amount,' the damages recoverable by an automobile agent for refusal to take an automobile contracted for is the difference between the contract price and what the car ready for physical delivery would have cost the agent." Syl. 4.

In *Stewart v. Hansen,* 62 Utah 281, 218 P 959, the Supreme Court of Utah cited the Torkomian case and expressed the view that it was the duty of the court to adopt the construction of the Sales Act which had been adopted in the Connecticut case in order to achieve the uniformity which is desired in those jurisdictions which have adopted the Uniform Sales Act. The rule of *Torkomian v. Russell* and *Stewart v. Hansen,* supra, is approved and followed in *Popp v. Yuenger,* 229 Wis 189, 282 NW 55, and *Breding v. Champlain Marine & Realty Co., Inc.,* 106 Vt 288, 172 A 625. In the situation which arises when the seller is a dealer or procures goods from other persons, the better rule is stated as follows:

"* * * According to one view, the measure of damages to be allowed such a seller is the difference between the contract price and the cost to the seller to secure the articles and perform the contract, or as it is also stated, the measure of damages is the profits the seller would have made if the contract had been performed. This rule has been deemed

justified, despite the provision of the Uniform Sales Act allowing the difference between the contract price of the goods and the market value at the time they ought to have been accepted or at the time of the refusal to accept, by reason of the limitation of that provision to cases 'where there is an available market for the goods' and where there are no 'special circumstances showing proximate damage of a greater amount.' Hence, the rule has been held applicable in cases where there is no available open market for the goods, and also, regardless of whether a market value exists, in cases where the special circumstances have been deemed to call for such a rule. * * *'' 46 Am Jur, Sales, § 631.

In the case at bar there is evidence that some expense has been incurred by the plaintiff, but there is no claim for a recovery upon that ground. There is no evidence as to the amount of additional expense, if any, which would necessarily have been incurred by the plaintiff in carrying out the contract if the defendant had not repudiated it. The agreement provided that the cost of transportation from the factory to the point of delivery was to be paid by the defendant. The rule which was applied by the trial court is similar to that which was applied by this court in *Forest Products Co., Inc. v. Dant & Russell, Inc.,* 117 Or. 637, 649, 244 P. 531. Speaking of the breach of a contract by a buyer who repudiates an agreement for the purchase of goods to be manufactured by the seller, this court said:

"* * * Where the breach of a contract by the buyer is the countermand of an order for goods to be manufactured, which justifies the seller in suspending the further manufacture, the measure of damages is, in case nothing has been done in special preparation for their manufacture or production, the difference between the cost of manufacture or production and the price to be paid according to the terms of the contract. Where the buyer repudi-

ates the contract before manufacture has been completed, the test of the cost of manufacture is almost universally adopted. This rule should be subject to the qualification that a reasonable deduction is to be made for the less amount of time required by the manufacturer, his employees, and the factory and for the release from trouble, risk and responsibility attendant on a full execution of the contract on his part.''

The court quoted with approval from the language of Mr. Justice Harris in *Feeney & Bremer Co. v. Stone,* 89 Or. 360, 171 P. 569, as follows:

'' 'The theory of the law is to award compensation for gains prevented and for losses sustained. The party who is damaged by the breach of a contract is not prevented from recovering anticipated profits merely because they are such. If it is reasonably certain that the breach of a contract has deprived the complaining party of a profit which was contemplated or can reasonably be presumed to have been contemplated by the parties at the time the contract was made then the party committing the breach is liable for the loss of the profit' ''.

There is one distinction between a case in which the manufacturer of goods is suing for damages on the one hand, and a case in which an agent for a manufacturer is suing for damages on the other. In fixing the damages of the manufacturer, a reasonable deduction may be made from his profits on account of the less amount of time required and expense involved ''attendant on a full execution of the contract''. When, however, an agent contracts to sell the product of a manufacturer, there may be no necessity or proof of further expense and therefore no deduction from the profits to be realized and which should be awarded as damages. Such is the case here.

The judgment of the circuit court is affirmed.